## JEWETT BROS. & JEWETT v. SMAIL.

### Food and Dairy Commissioner.

On appeal from an order granting a temporary injunction restraining the enforcement of a statute on the ground that it is unconstitutional, nothing more should be considered, ordinarily, than manifest abuse of discretion in granting the injunction; but, where the question will necessarily arise in the court below and the objections to the statute have been argued, and all the parties desire a speedy determination of the litigation, it is proper to determine whether the facts stated constitute a cause of action.

A wholesale grocer residing in the state and who is engaged in purchasing and selling goods in this and other states and countries is entitled to attack the validity of Laws 1905, p. 161, c. 114, entitled "An act to provide for a state food and dairy department, to prevent the adulteration, misbranding and imitation of foods," etc.

If a statute be unconstitutional, a court of equity has authority to enjoin its enforcement for the purpose of avoiding a multiplicity of suits and because plaintiff has no adequate remedy at law.

Laws 1905, p. 161, c. 114, entitled "An act to provide for a state food and dairy department, to prevent the adulteration, misbranding and imitation of foods, beverages, candies and condiments, and regulating the manufacture and sale of dairy products," was within the police power of the state, except in so far as the means employed go beyond the necessity of the case or unreasonably burden the exercise of privileges secured by the federal Constitution.

Laws 1905, p. 163, c. 114, § 11, providing that "it shall be unlawful for any person to sell, offer or expose for sale any article of prepared foods unless the true name of the manufacturer and the location of the factory where such article of food is prepared is plainly printed or stenciled on the package, box, can, carton or other container," constitutes an unreasonable interference with interstate and foreign commerce.

(Opinion filed, Nov. 29, 1905.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by Jewett Bros. and Jewett, a corporation, against E. W. Smail, food and dairy commissioner of the state of South Dakota. From an order granting a temporary injunction, defendant appeals. Affirmed.

*Philo Hall, Attorney General,* for appellant.

Inspection is the examination of certain articles made by law subject to such examination, so that they may be declared fit for commerce; an examination of an article to determine its fitness for a given purpose. 16 Ency. of Law, (2nd Ed.) 808. This power of inspection not only extends to articles to be used as food, but also to any article in common use which may be the subject of fraud, deception or unwholesomeness. Potapsco Guano v. Board of Agriculture of North Carolina, 171 U. S. 345. In conferring upon Congress the regulation of commerce, it was never intended to cut the states off from legislation on all subjects relating to the health, life and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution. Sherlock v. Alling, 93 U. S. 99; Hall v. De Cuir, 95 U. S. 487; Kidd v. Pearson, 128 U. S. 23; Plumley v. Massachusetts, 155 U. S. 473; Hopkins v. United States, 101 U. S. 594. The 14th amendment to the Constitution of the United States, and the clause thereof providing that "No state shall deprive any person of life, liberty or property without due process of law," was not intended to, and does not, make any change in respect to the police power of the states. Slaughter House Cases, 16 Wall. 36; Powell v. Pennsylvania, 127 U. S. 678; M. & St. L. R. Co. v. Beckwith, 129 U. S. 26; Giozza v. Tierman, 148 U. S. 657; Hooper v. Cal-

ifornia, 155 U. S. 648; Holden v. Hardy, 169 U. S. 366. Under the police power a state can interfere whenever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine not only what the.interests of the public require, but what measures are necessary for the protection of such interests. 22 Enc. Law, 2nd Ed., 936. The labeling of prepared food products even where such labeling is not used to aid and facilitate inspection of the articles has repeatedly been required by statutory enactments and such acts sustained. State v. Sherod, 83 N. W. 417. A statute is to be construed with reference to its manifest object, and if the language is susceptible of two constructions, one which will carry out and the other will defeat such manifest object, it should receive the former construction. 2 Lewis' Sutherland Statutory Construction, §'369. Quebec Bank v. Carroll, 1 S. D. 1; Jones v. Fidelity Loan & Trust Co., 7 S. D. 122; Meade County Bank v. Reeves, 13 S. D. 193. When a subject is within that (the police) power, the extent to which it shall be exercised, and the regulations to effect the desired end, are generally wholly in the discretion of the legislature. State v. Smith, 59 N. W. 545. The courts will never set up their judgment against that of the legislature, and hold a police law invalid, unless it is clearly so, as having no reasonable tendency to accomplish the desired end. State v. Mrozinski, 61 N. W. 560; In re Ten Hour Law for Street Railway Corporations, 61 L. R. A. 612.

    *Bailey & Voorhees,* for respondent.

    Section 11 of the Pure Food Act is unconstitutional, in that (a) it violates the commerce clause of the federal constitution, and in that (b) it is in contravention of the fourteenth amendment to the federal constitution. The legislature of South Dakota has seen fit to attempt a change in the commercial methods which represent the accumulated wisdom of many centuries of wholesale and retail grocery trading, and by Section 11 of Chapter 114 of the Laws of 1905, to provide that every article of prepared food for sale in South Dakota must have the true name of the manufacturer and the location of the factory where the article of food is prepared, plainly printed on the package or other covering in which the article of

food is contained. Articles of interstate commerce, while in original packages, are not subject to the laws of the several states. Leisy v. Hardin, 135 U. S. 100. Section 11 is in violation of the commerce clause of the federal constitution, and also in violation of the fourteenth amendment to the constitution. Section 8 of Article 1 of the constitution of the United States provides, "The Congress shall have power * * * to regulate commerce with foreign nations and among the several states, and with the Indian tribes." Since the decision in Welton v. Missouri 91 U. S. 275, the following proposition may be regarded as definitely settled by the Supreme Court of the United States. First. Congress possesses absolute authority to regulate foreign, inter-state and Indian commerce, and such authority is exclusive, provided the regulations imposed do not interfere with those subjects the regulation of which is reserved to the states under the Constitution. Second. In any cases in which Congress has not affirmatively acted, the several states cannot regulate foreign, interstate or Indian commerce, excepting: (a) In cases of those subjects the power to regulate which is reserved to the states under the Constitution. (b) In cases in which the state, in the legitimate exercise of the police power, imposes regulations to preserve the safety or health of its citizens; and (c) In cases in which the subject of regulation is of great local and small national importance. The police power of a state cannot obstruct foreign commerce or interstate commerce beyond the necessity for its exercise; and, under color of it, objects not within its scope, cannot be secured at the expense of the protection afforded by the Federal Constitution. Railroad Co. v. Husen, 95 U. S. 495. Henderson v. The Mayor of New York, 92 U. S. 259, and Chy Lung v. Freeman, 92 U. S. 275. It matters not whether the regulation be under the guise of a law requiring a municipal license to sell certain goods, or a health law requiring inspection of the article, or a label law, as in this case, requiring the article to be branded or labeled. Whey they operate as burdens or restrictions upon the freedom of trade or commercial intercourse they are invalid. Brennan v. Titusville, 153 U. S. 289; Brimmer v. Rebman, 138 Id. 78; Minnesota v. Barber, 136 Id. 313; Welton v. Missouri, 91 Id. 275; Web-

ber v. Virginia, 103 Id. 344; Ward v. Maryland, 79 Id. 418; Voight v. Wright, 141 Id. 62; Bowman v. Chicago & N. W. R. Co., 125 Id. 465; Guy v. Baltimore, 100 Id. 454; Gloucester F. Co. v. Pennsylvania, 114 Id. 196; Brown v. Houston, Id. 622; Robbins v. Shelby County Taxing District, 120 Id. 489; Gulf C. & S. F. Ry. Co. v. Ellis, 165 Id. 150; Allegeyer v. Louisiana, Id. 578; People v. Hawkins, 85 Hun. 43.

HANEY, J. The purpose of this action is to perpetually enjoin the enforcement of section 11, c. 114, p. 163, Laws 1905, on the ground that it conflicts with certain provisions of the federal Constitution. The appeal is from an order granting a temporary injunction based on the complaint and certain affidavits read by the respective parties. In this court the ultimate issue, the constitutionality of the statute, was ably and exhaustively argued, notwithstanding the only question presented by this appeal is whether the learned circuit court abused its discretion. As there was ground for controversy concerning the validity of the statute, though courts should be slow to enjoin the performance of official duties prescribed by presumptively valid statutes, in view of all the facts and circumstances disclosed by the complaint and affidavits, this court cannot conclude that there was an abuse of discretion in issuing a restraining order pending litigation, and such order should be affirmed. Ordinarily nothing more should be considered on such an appeal than manifest abuse of discretion, but as the question will necessarily arise in the court below, as the objections to the statute have been argued, and as all parties desire a speedy termination of the litigation, it has been deemed proper to determine at this time whether the complaint states facts sufficient to constitute a cause of action. Its allegations are substantially as follows: That the defendant is the food and dairy commissioner of this state; that the plaintiff is a corporation, created by and existing under the laws of this state, engaged in the wholesale grocery business at Sioux Falls; that it has been so engaged for about 12 years; that during such time the plaintiff has done an extensive and profitable business in this and other states; that the plaintiff purchases the groceries and other articles in which it deals at various places in the United States

outside of this state and in foreign countries; that, aside from food products purchased by it from one concern in this state, to-wit, the Manchester Biscuit Company, all the articles in which it deals are purchased in states other than this and in foreign countries and shipped into this state for sale to retail merchants in this and other states; that all articles in which it deals and which it has purchased from the Manchester Biscuit Company comply in all respects, as to labels, with the provisions of section 11, c. 114, p. 163, Laws 1905; that the provisions of said section are in violation of section 8, art. 1, and section 1, art. 14, of the Constitution of the United States; that for many years the plaintiff has sold the food and food products in which it deals under certain private brands adopted by it, the principal being its "High Grade" brand and its "Guaranteed" brand, and that the food products and other articles sent out under said brands from year to year have been continually of a uniform grade and quality, and that said brands have constituted and still constitute the plaintiff's guaranty of the purity, grade and quality of the articles sold under such brands; that the sale of articles under such brands has been established throughout the state, and that said brands possess a commercial value exceeding the sum of $25,000; that the plaintiff now has on hand a stock of groceries, foods, and food products of a value exceeding $100,000, and that the value of the good will of its business in this state exceeds the sum of $100,000; that under the customs and laws adopted and recognized for the carrying on of the wholesale and retail grocery business throughout the civilized world the name and address of the manufacturer, canner, or packer of various articles of food and food products rarely appears upon the box or other package containing any given articles, but that articles of food and food products are in accordance with a general custom, sold by the manufacturer, canner, packer, or other producer, through brokers or warehousemen, to wholesalers by grade, quality, and variety, and that they are then branded according to grade, quality, and variety by the wholesale merchant, and by him distributed under the guaranty of his own private brand to the retail trade; "that it would be impossible to carry on successfully the wholesale grocery business in

the state of South Dakota in compliance with the provisions of section 11, c. 114, p. 163, Laws 1905, without first revolutionizing the rules and customs under which the manufacturing, packing, canning, and wholesaling of food and food products is conducted throughout the civilized world"; that after the articles of food and food products prepared or manufactured, as aforesaid, have been purchased in other states and countries by the plaintiff and the other wholesale grocers doing business in this state, and are shipped into this state, the same are sold by the plaintiff in the original packages in which the same come into this state; that on or about June 1, 1905, the defendant notified the retail grocers of this state that all goods purchased or shipped into the state on and after July 1, 1905, must conform strictly to the requirements of the law then in force, both as to quality and labeling, and that food shipped into this state not labeled as required under the provisions of the law is subject to confiscation and that every box, can, carton, or other container must bear the name of the manufacturer and the location of the factory; that since July 1, 1905, the defendant has notified wholesale grocers doing business in this state that they must immediately forward labels for all goods sold in the state since July 1, 1905, which are lacking in respect to the name and address of the manufacturer appearing on the labels, and that, failing to do this, all goods will be ordered shipped back by the retail to the wholesale dealer from whom purchased, and that a repetition will be followed by prosecution; that section 11, c. 114, p. 163, Laws 1905, cannot be violated with impunity and that the defendant will resort to prosecutions to enforce the same; that the defendant is now about to institute prosecutions against the plaintiff and other wholesale grocers of this state for violating the provisions of said section; that, if the defendant proceeds with confiscation and prosecutions for the violation of said section, plaintiffs business will be seriously injured, if not destroyed, the value of plaintiff's private brands will be destroyed, the good will of the plaintiffs business will be seriously impaired, if not wholly destroyed, and the plaintiff will suffer great loss in disposing of its stock of groceries, foods, and food products, and plaintiff will also become involved in a multiplicity

of suits both with the defendant and with other authorities of this state, and also with a large percentage of its more than 1,500 customers in this state; that the defendant is wholly unable to respond financially in the damages which would be caused to the plaintiff; that the plaintiff would thereby suffer irreparable injury; and that it has no adequate remedy at law.

Assuming the well-pleaded allegations of the complaint to be true, it clearly appears that the plaintiff has such an interest in the enforcement of the statute as entitles it to attack its validity, and that a court of equity has authority to enjoin its enforcement, if it be unconstitutional, for the purpose of avoiding a multiplicity of suits, and because the plaintiff has no adequate remedy at law. The Supreme Court of the United States is, of course, the one ultimate judicial authority on all questions of interstate and foreign commerce. The difficulty of reconciling all its decisions upon the subject is shown by the extraordinary number of dissenting opinions in cases where it has been considered. No useful purpose would be served by an extended review of such cases, and we shall content ourselves with an attempt to ascertain from the more recent adjudications of that high tribunal what principles are applicable to the precise issue under discussion. We believe the following propositions have been settled beyond controversy: (1) The power of the state to impose restraints and burdens upon persons and property in conservation of the public health, good order, and prosperity, is a power originally and always belonging to the states, not surrendered by them to the general government, nor directly restrained by the Constitution of the United States, and essentially exclusive. (2) The power of Congress to regulate commerce among the several states, when the subjects of that power are national in their nature is also exclusive. (3) The failure of Congress to exercise this exclusive power in any case is an expression of its will that the subject shall be free from restrictions or impositions upon it by the several states. (4) A state has power to regulate the introduction of any article, including food products, so as to insure purity of the article imported, but the police power does not include the total exclusion of any lawful article of commerce. (5) "The

Constitution of the United States does not secure to any one the privilege of defrauding the public." In re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865; Schollenberger v. Pennsylvania, 171 U. S. 1, 18 Sup. Ct. 757; Patapsco Guano Co. v. North Carolina, 171 U. S. 345, 18 Sup. Ct. 862. "If there be any subject," says Mr. Justice Harlan, speaking for a majority of the court, "over which it would seem the states ought to have plenary control, and the power to legislate in respect to which, it ought not to be supposed, was intended to be surrendered to the general government, it is the protection of the people against fraud and deception in the sale of food products. Such legislation may, indeed, indirectly or incidentally, affect trade in such products transported from one state to another state. But that circumstance does not show that laws of the character alluded to are inconsistent with the power of Congress to regulate commerce among the states. For, as said by this court in Sherlock v. Alling, 93 U. S. 99, 103: 'In conferring upon Congress the regulation of commerce, it was never intended to cut the states off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it within the meaning of the Constitution. * * * And it may be said generally that the legislation of a state, not directed against commerce or any of its regulations, but relating to the rights, duties, and liabilities of citizens, and only indirectly and remotely affecting the operations of commerce, is of obligatory force upon citizens within its territorial jurisdiction, whether on land or water, or engaged in commerce, foreign or interstate, or in any other pursuit." Plumley v. Massachusetts, 155 U. S. 461, 15 Sup. Ct., 154; Crossman v. Lurman, 192 U. S. 189, 24 Sup. Ct. 234. In Reid v. Colorado, 187 U. S. 137, 23 Sup. Ct. 92, the same distinguished jurist employs this language: "Certain principles are well settled by the former decisions of this court. One is that the purpose of a statute, in whatever language it may be framed, must be determined by its natural and reasonable effect. Henderson v. New York, 92 U. S. 259, 268, sub. nom. Henderson v. Wickham, 23 L.

Ed. 543, 548. Another is that a state may not, by its police regulations, whatever their object, unnecessarily burden foreign or interstate commerce. Hannibal & St. J. R. Co. v. Husen, 95 U. S. 465, 472. Again, the acknowledged police powers of a state cannot legitimately be exerted so as to defeat or impair a right secured by the national Constitution, any more than to defeat or impair a statute passed by Congress in pursuance of the powers granted to it. Gibbons v. Ogden, 9 Wheat. 1, 210; Missouri, K. & T. R. Co. v. Haber, 169 U. S. 613, 625, 626, 18 Sup. Ct. 488, and authorities cited. Now, it is said that the defendant has a right under the Constitution of the United States to ship live stock from one state to another state. This will be conceded on all hands. But the defendant is not given by that instrument the right to introduce into a state, against its will, live stock affected by a contagious, infectious or communicable disease, and whose presence in the state will or may be injurious to its domestic animals. The state, Congress not having assumed charge of the matter as involved in interstate commerce, may protect its people and their property against such dangers, taking care always that the means employed to that end do not go beyond the necessities of the case or unreasonably burden the exercise of privileges secured by the Constitution of the United States."

So it must be conceded that this state, in the exercise of its police power, may so regulate the introduction and sale of food products as to insure purity of the products imported, provided the means employed to that end do not go beyond the necessities of the case or unreasonably burden the exercise of any privilege secured by the federal Constitution. The motives of the Legislature cannot be impugned, nor can there be any doubt as to the purpose of chapter 114, p. 161, Laws 1905. It is, as expressed in its title, "An act to provide for a state food and dairy department, to prevent the adulteration, misbranding and imitation of foods, beverages, candies and condiments, and regulating the manufacture and sale of dairy products." It was manifestly designed to prevent fraud and deception in the sale of food products, and to protect the peo-

ple of this state from the recognized evils of impure foods and beverages. It does not discriminate between resident and nonresident dealers or between articles produced in this state and those produced elsewhere. No part of it is assailed, except section 11. Hence the only · remaining inquiry is whether the provisions of that section, considered in connection with the well-pleaded allegations of the complaint and facts of which this court may take judicial notice, impose unnecessary or unreasonable burdens upon the exercise of any privilege secured to the plaintiff by the Constitution of the United States.

Section 11 reads as follows: "It shall be unlawful for any person to sell, offer or expose for sale any article of prepared foods, unless the true name of the manufacturer and the location of the factory where such article of food is prepared is plainly printed or stenciled on the package, box, can, carton or other container." "The principle is universal that legislation, whether by Congress or by a state, must be taken to be valid, unless the contrary is made clearly to appear." Reid v. Colorado, supra. The object of the legislation under discussion being legitimate and laudable, it must be presumed the Legislature has provided appropriate means to secure such object, and upon the plaintiff rests the burden of showing the contrary. The term "food," as used in section 11, includes "all articles used for food, drink, flavoring, confectionery, or condiment, by man or domestic animals whether simple, mixed or compound." Laws 1905, p. 162, c. 114, § 6. So every prepared article used for food, drink, flavoring, confectionery, or condiment, by man or domestic animals, whether simple, mixed, or compound, is required to be marked with the true name of the manufacturer and the location of the factory where it is prepared. It is alleged in the complaint that for many years the plaintiff has sold the foods in which it deals under certain private brands; that the foods and other articles sold under its brands have been continually of a uniform grade and quality; and that such brands have constituted and still constitute its guaranty of the purity, grade, and quality of the articles so sold. It is also alleged that the name and address of the preparer of food products rarely appears upon the container, but

that such articles are almost entirely sold through brokers or ware-housemen to wholesalers, by grade, quality, and variety, and are then branded by the wholesaler and distributed under the guaranty of the wholesaler's brand.   If these allegations be true, the enforcement of section 11 would certainly revolutionize existing methods of conducting the wholesale grocery business in this state. While, as to many articles embraced within the very comprehensive legislative definition of prepared foods, the expense and inconvenience of complying with the statute would be so trifling as to merit no consideration, as to others, compliance might be practically impossible, the enforcement of the statute resulting in total exclusion and as to such articles it clearly would be unconstitutional.

Now, with respect to such articles as would not be excluded by operation of the section, is the regulation necessary and reasonable? The object sought is pure food; the practical effect merely information as to where and by whom the food is prepared.   Wholesome food cannot be condemned, confiscated, or excluded merely because it is prepared in any particular state or country.   The quality of an article cannot be affected by the brand under which it is sold. A can of corn bearing Jewett's "Guaranteed" brand would not be relieved of any injurious properties by the mere addition of the canner's name and address.   But it is contended that, were this regulation in force and the commissioner should discover impurities in the products of any particular factory, he would be authorized to condemn or confiscate any article bearing the same brand without an inspection of the article itself.   Conceding this to be true, the argument proves too much.   If an inspection of the contents of one container will justify confiscation of all articles bearing the same brand, the power exists independently of section 11, and the enforcement of that section would hinder rather than assist the commissioner in the discharge of his official duties, because, under its operation, confiscation would be restricted to the particular factory brand, whereas, without it, the commissioner might condemn the products of all the factories sold under any particular wholesaler's brand.   To illustrate: Say the plaintiff sells the products of 10 corn canneries under one brand, according to the defendant's con-

tention, this law would only enable him to confiscate the product of one cannery, on inspection of the contents of one can bearing such cannery's brand, whereas, if such would be his authority, he could, without the section, confiscate the products of the entire 10 canneries, on the inspection of one container bearing the plaintiff's brand. If the regulation would have no other legitimate effect than the one contended for by the defendant, and we confess we are unable to imagine any other, its enforcement, where possible, would tend to defeat rather than promote the purposes of the pure-food law as a whole. Therefore, assuming the allegations of the complaint to be true, the requirements of section 11 are wholly unnecessary, its provisions clearly constitute an unreasonable interference with interstate and foreign commerce, and its enforcement should be perpetually enjoined.

The order appealed from is affirmed, and the case remanded for further proceedings consistent with this decision.