## Ex parte HAWLEY.

Courts will take judicial notice of the fact that trees and other forms of plant life are subject to destructive communicable diseases.

Congress not having assumed charge of the matter as involving interstate commerce, the states have power to prescribe police regulations calculated to prevent the spread of disease among plants and trees, whether grown and sold within the state or raised in foreign nurseries and transported and sold for planting within the state.

Laws 1907, p. 414, c. 194, § 1, requires inspection of nurseries maintaining salesmen in the state by an entomologist under the direction of the state board of agriculture, and provides for the issuance of a certificate entitling such nurserymen to do business within the state, and also requires as a condition precedent a bond to the state on which persons sustaining damage by reason of a violation of the provisions of the act might recover, and section 5 imposes an annual fee of $10 for each permit and $2.50 for each agent's duplicate, and provides that the money be placed in a separate fund known as the "Nursery Regulation Fund." Held, that such provisions were reasonable and valid; the provision for a bond being construed to require only the bond of the nurserymen without sureties.

Laws 1907, p. 414, c. 194, regulating the sale of nursery stock, provides for the issuance of a certificate and permit by the state board of agriculture, and declares that, as a condition precedent there-

to, the board shall require such references and evidences of integrity as may be necessary to establish the responsibility and good faith of the applicant, but provides for no appeal from the decision of the board. Held, that the word "responsibility," as so used, meant ability to answer in payment or to respond in damages for injuries caused by the sale of improper nursery stock, and that such provision, not being within the police power of the state to protect the people from fraud, imposition, and deception, was a violation of Const. art. 6, § 2, as depriving nurserymen of their property without due process of law, in conferring on the board an absolute power to determine who shall and who shall not sell nursery stock within the state.

Laws 1907, p. 414, c. 194, § 1, authorizing the state board of agriculture to refuse permission for the sale of nursery stock to persons failing to satisfy the board of their integrity and responsibilty, is in conflict with the interstate commerce clause of the federal Constitution.

Laws 1907, p. 414, c. 194, § 2, requiring agents of nonresident nurserymen selling nursery stock in South Dakota grown in other states or territories to carry a duplicate permit issued by the state board of agriculture, is invalid as a discrimation between resident and nonresident dealers.

(Opinion filed, February 10, 1908.)

Habeas corpus on petition of Henry M. Hawley. Petitioner remanded.

*Edwin R. Wians (McGuire & Wood, of counsel)*, for accused. *S. W. Clark*, Atty Gen., for the State.

HANEY, P. J.   The only issue arising in this proceeding is one of law—whether the facts stated in the information upon which the accused was arrested constitute a public offense.   The substance of the charge is that the accused, the duly constituted representative of the proprietor of a nursery located in Iowa, solicited and received in this state an order for nursery stock from such nursery to be paid for on delivery in this state; the proprietor of such nursery not having secured a permit to transact business in this state.   Whether these facts constitute a crime depends upon the construction and effect to be given an act of the last Legislature described in its title as "An act relating to the inspection and registration of fruit tree nurseries and regulation of nursery agents," containing the following provisions·

"Sec.   1.   Any person, firm or corporation which owns or operates a nursery in South Dakota or any other state or ter-

ritory and which desires to sell from the same, either directly or indirectly, · by traveling or local agents, salesmen or representatives, any trees, vines, bushes or other nursery stock, within the limits of the state of South Dakota, shall first secure a permit from the board of agriculture, authorizing such nursery, or its duly constituted representatives, to do business in the state. As conditions precedent to the issuance of such permit, the board of agriculture shall require a certificate of inspection from a competent entomologist, duly authorized to act as an inspector in the state or territory where such nursery is owned and operated, and the board of agriculture shall furthermore, require such references and evidences of integrity as may seem to be necessary to establish the responsibility and good faith of the applicant. The said state board of agriculture shall require of all persons, firms or corporations operating under the provisions of this act, to give a continuing bond in the sum of $5,000.00 running to the state of South Dakota, on which any person who sustains damage by reason of the violation of the provisions of this act may recover.

"Sec. 2. Any person, who, acting as agent or solicitor, within the limits of the state of South Dakota, sells, or offers to sell, trees or any other nursery stock for any person, firm or corporation which may be engaged in the nursery business, shall be required to carry a letter or certificate from his principal, setting forth the fact that he is duly authorized to represent such nursery and that the guarantee is made that any written contract entered into by him, as agent, will be fulfilled if the same is accepted by said nursery and unless notification to the contrary be made in writing to the purchaser within thirty days .after such order or contract is made. In addition to the foregoing, each agent or solicitor who sells or offers to sell trees or other nursery stock, that may have been grown in any other state or territory, shall be required to procure and carry a duplicate of the permit issued to his principal.

"Sec. 3. It shall be unlawful to misrepresent nursery stock which is offered for sale, or refuse to state where the same was propagated or the manner of propagation, to sell, offer for sale or deliver nursery stock which is untrue to name or which, because of lack ·of hardiness, or from the use of tender roots or stocks in propagation are worthless for the locality where they

are to be planted or to sell seeds which have been adulterated or seeds by reason of age have become deficient in vitality and germinating power, or containing seeds of any noxious or injurious plants to any greater extent than is alleged or claimed in the seed test of the goods sold.

"Sec. 4. The violation of the provisions of any of the foregoing sections of this act shall be deemed a misdemeanor, punishable by a fine of not less than fifty dollars nor more than three hundred dollars and in addition, any person, firm or corporation engaged in the nursery business or any nursery agent or solicitor who violates the provisions of the foregoing sections of this act shall forfeit the permit which gives the right to do business in the state of South Dakota which may be held by such party or parties and such agent or solicitor shall be disqualified to receive a permit to act as agent for any other nursery which operates in the state of South Dakota."

Section 5 requires the collection annually of a fee of $10 for each permit, and $2.50 for each agent's duplicate, the money so collected to be paid over to the state treasurer and placed in a separate fund known as the "Nursery Regulation Fund." Section 6 repeals all statutes in conflict with the provisions of such act. Laws 1907, pp. 414, 415, c. 194.

Relator's contention is (1) that this statute imposes unconstitutional burdens and restraints upon persons engaged in a legitimate and innocuous business; and (2) that it conflicts with the interstate commerce clause of the federal Constitution. The force of this contention necessarily depends upon the nature of the burdens and restrictions imposed, which must be determined by the meaning and effect of the language employed to express the legislative will; the burden of the permit being measured by the prescribed conditions precedent to its issuance.

It is a matter of common knowledge of which this court may take judicial notice that trees and other forms of plant life are subject to destructive communicable diseases. State v. Main, 69 Conn. 123, 37 Atl. 80, 36 L. R. A. 623, 61 Am. St. Rep. 30. Diseases in plants have existed as long as plants themselves—ages before the advent of man. In the earliest historical records, as well as in early Greek and Roman times, some of the more destructive diseases of plants, like rust and mildew or blight of cereals, were widely known and discussed; and though formerly

unreliable theories on the subject may have received more or less general recognition, the recent exhaustive researches of distinguished 'specialists have placed the pathology of plants on a foundation scarcely less scientific and satisfactory than that occupied by the pathology of animals. Ency. Americana,Diseases in Plants. This being so, the power to prescribe regulations calculated to prevent the spread of diseases among plants cannot be less ample than the power to prescribe regulations calculated to prevent the spread of diseases among domestic animals. Concerning the latter the Supreme Court of the United States has said: "Now it is said the defendant has a right under the Constitution of the United States to ship livestock from one state to another state. This will be conceded on all hands; but the defendant is not given by that instrument the right to introduce into a state, against its will, livestock affected by a contagious, infectious, or communicable disease, and whose presence in the state will or may be injurious to its domestic animals. The state—Congress not having assumed charge of the matter as involved in interstate commerce—may protect its people and their property against such dangers, taking care always that the means employed to that end do not go beyond the necessities of the case, or unreasonably burden the exercise of privileges secured by the Constitution of the United States." Reid v. Colorado, 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed 115. The authority of a state Legislature to establish reasonable regulations for the prevention of diseases injurious to domestic animals or plants cannot be questioned. Therefore the provision of the statute under discussion, requiring a certificate from a competent entomologist, being manifestly intended and calculated to prevent the sale and distribution of diseased nursery stock, applicable alike to resident and nonresident dealers,and one which does not go beyond the necessities of the case, or unreasonably burden the exercise of privileges secured by the state or federal Constitution, such provision conflicts with no principle of constitutional law, and its validity must be sustained. As an incident to its power to enact valid inspection laws, a state may impose a reasonable charge for the purpose of defraying the expenses of inspection. 17 Am. & Eng. Ency. Law. 81. The fee for a permit provided for in section 5 is not unreasonable. The provision relating to the giving of a continuing bond neither requires, nor authorizes the board to require, that the bond shall be signed by sureties of any descrip-

tion, or that the performance of the nurseryman's obligation shall be secured in any manner whatever. The giving of the writing obligatory required by the statute could not in the slightest degree affect the liability of the nurseryman or the recovery of one who sustains damage by reason of any violation of the act, as the rights of persons connected with the sale of nursery stock must be determined by the law in force when the sale occurs. The board of agriculture could not be clothed with power to require a form of bond which would operate to modify any existing statute. Phoenix Ins. Co. v. Perkins, 19 S. D. 59, 101 N. W. 1110; Vessey v. Assurance Co., 18 S. D. 632, 101 N. W. 1074. The legislature did not attempt to confer such power. No nurseryman is required by the act to incur any obligations other than those imposed by the law itself. The prescribed bond is merely an undertaking not to violate the law. The board cannot insist upon its containing any other conditions. The giving of such an unsecured undertaking leaves injured persons no resources in the collection of damages other than the financial responsibility of the principal and only obligor on the bond; and that resource exists independently of the undertaking. The law respects form less than substance. It disregards trifles, and neither does nor requires idle acts. Rev. Civ. Code 1903, §§ 2427, 2431, 2432. Therefore, as no consequences, either beneficial or injurious, can possibly result therefrom, the giving of the prescribed bond should not be regarded as a condition precedent to the issuance of a permit.

The provision relating to the "integrity" and "responsibility" of the applicant for a permit cannot be otherwise construed than as intended to clothe the board of agriculture with power to determine who shall and who shall not sell nursery stock in this state. It fixes no limits to the board's discretion, and allows no appeal from its decision. Generally the decisions of such boards, made in the exercise of a lawful discretion, are not subject to review where the right of appeal is not expressly conferred. Such a grant of power, with respect to persons engaged in a legitimate and innocuous business, is unusual and should be scrutinized with the utmost care. "The courts are not bound by mere forms, nor are they to be misled by mere pretense. They are at liberty—indeed and are under a solemn duty—to look at the substance of things whenever they enter upon the inquiry whether the Legislature has transcended the limits of its authority. If, therefore, a statute pur-

porting to have been enacted to protect the public health, the public morals, or the public safety has no real or substantial relation to those objects, or is a palable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." Mugler v. Kansas, 123 U. S. 651 8 Sup. Ct. 297; Ex parte Hayden, 147 Cal. 649, 82 Pac. 315, 1 L. R A. (N. S.) 184. Assumming that the police power may be exercised for the purpose of protection against fraud, imposition and deception, has the provision under discussion any real or substantial relation to that object? If the word "responsibility", as used in section 1, was intended to signify anything and we are bound to assume it was, it means "ability to answer in payment" (Web. Int. Dict.), ability to respond in damages for actionable injuries. Honesty has no substantial relation to financial ability. Fraudulent practices are not confined to the poor. The establishment of a nursery involves labor rather than the expenditure of money. Usually it is begun in a small way by a man of moderate means. One who has invested his toil in the production of sound trees cannot be denied the right to sell them without being deprived of his property without due process of law. Const. S. D. art. 6, § 2. The legislature may regulate, but it may not prohibit, the sale or introduction into the state of any legitimate article of commerce. Jewett Bros. & Jewett v. Smail, 20 S. D. 232, 105 N. W. 738. Certainly it cannot confer upon the board of agriculture a power which it does not itself possess, as was in effect attempted by the provision authorizing such board in the exercise of an undefined discretion to refuse permits on the ground of the applicant's want of financial ability. It is true this court has sustained a statute conferring unlimited authority upon county commissioners to accept or reject liquor license bonds, but the decision was placed on the ground that the business of selling intoxicating liquors is not one of natural right, but one which may be restrained, limited, or entirely prohibited by the state. Burke v. Collins, 18 S. D. 190, 99 N. W. 1112. Such is not the character of the business here involved. We are now dealing with a business or occupation which in itself is universally recognized as innocent and useful to the community in which it is conducted, notwithstanding the nature of the article sold may render the immediate detection of fraud and misrepresentation difficult. Doubtless there

are dishonest men in the nursery business. There are such men in all lines of business, professions and occupations All nurserymen are not dishonest. The business itself is not harmful; on the contrary and especially in this state the production of trees, flowers and all forms of healthful plant life is beneficial, and should be encouraged. The provision of section 1, relating to the integrity and responsibility of applicants for permits, cannot be sustained as a valid exercise of the police power, and it conflicts with the interstate commerce clause of the federal Constitution. The provision requiring agents who sell trees grown in other states or territories to carry a duplicate permit clearly discriminates between resident and nonresident dealers, and is for that reason invalid. 8 Cyc. 1046. Having considered all the provisions affecting the issue involved in this proceeding, it is unnecessary and would be unwise to express any opinion concerning other features of the statute.

It follows that there are only two valid conditions precedent to the issuance of a permit, namely, (1) a certificate of inspection from a competent entomologist; and (2) the payment of the required fee; that it is a crime to sell nursery stock in this state without a permit; and that the accused must be remanded to the custody of the sheriff to abide the orders of the court which issued the warrant for his arrest.