[Crim. No. 1673.   Third Appellate District.—April 22, 1939.]

In the Matter of the Petition of GEORGE McNEAL, for a Writ of Habeas Corpus.

A. D. Ericksen and R. Platnauer for Petitioner.

F. C. Clowdsley, District Attorney, and Donald C. Boscoe, Assistant District Attorney, for Respondent.

THOMPSON, J.—The petitioner was convicted of a misdemeanor committed by selling loaves of bread to which labels or trademarks designating the manufacturer thereof were not attached, contrary to the provisions of section 8 of the Sanitary Bakery Law of California. (Stats. 1921, p. 1191, and amendment of 1931, p. 250; 1 Deering's Gen. Laws of 1937, p. 192, Act 610.) The petitioner was imprisoned as a penalty for that offense, and now seeks to regain his liberty by means of *habeas corpus*.

It is contended the act is unconstitutional for the reason that it imposes onerous burdens on the business of manufacturing bread, and because it unlawfully discriminates between "loaves of bread" as a class, and rolls, buns and bis-

cuits, by requiring labels or trademarks identifying the manufacturer thereof to be attached to the loaves, but fails to compel the identification of the baker of the latter class in that manner.

The bakery statute was enacted under the police power of the state to enforce sanitary conditions and to procure the use of pure, wholesome ingredients in the manufacturing of bread and pastry. Bread is the chief article of food consumed by the human race. The days of home-made bread have passed. The baking of bread is among our greatest industries. More than a million loaves of bread are daily sold to the public in California. It is therefore important that every reasonable precaution should be taken to provide the public with pure, wholesome bread.

The California Sanitary Bakery Law purports to regulate the establishments, machinery, equipment and materials with which bread and pastries are manufactured, and marketed. It specifies in detail the means of maintaining sanitary conditions. It requires the use of pure, wholesome ingredients. Bread which is sold through intermediate dealers must be wrapped with paper to protect it from dirt and contamination. For the same reason, the act provides that "no bakery products, other than hearth-baked bread and rolls" shall be returned from any consumer or other purchaser to the baker or dealer.

The state board of health is authorized to adopt reasonable rules to carry out the purpose of the act. A violation of the provisions of the statute is made a misdemeanor. Section 8 of the Sanitary Bakery Law, under which the petitioner in this proceeding was convicted, reads as follows:

"Every loaf of bread made or procured for the purpose of sale, sold or offered for sale except when sold directly from the manufacturer to the consumer, shall have affixed thereon in a conspicuous place a label indicating the manufacturer, or bearing the registered trademark or trade label of such manufacturer. In case of wrapped bread, such information shall be stated in a plain position upon the wrapper of each loaf, and in the case of unwrapped bread shall be stated upon a label no larger than one by one and one-half inches in size and not smaller than one inch by three-quarters of an inch, and such label affixed to an unwrapped loaf shall not

be affixed in any manner or with any gums or pastes which are unsanitary or unwholesome.''

■ The constitutionality of the statute under which the petitioner was convicted may be properly tested by means of *habeas corpus.* (*In re Leach,* 215 Cal. 536, 547 [12 Pac. (2d) 3]; 13 Cal. Jur. 225, sec. 8; 32 A. L. R. 1054, note.) ■ Under the police powers of the state, the legislature is authorized to enact statutes in the interest of public health, regulating the manufacture and sale of foods, including bread. (12 Cal. Jur. 584, sec. 1; 26 C. J. 752, secs. 3 and 4; 6 R. C. L. 214, secs. 209, 210; *In re Bear,* 216 Cal. 536 [15 Pac. (2d) 489, 83 A. L. R. 1402]; *Affonso Bros.* v. *Brock,* 29 Cal. App. (2d) 26 [84 Pac. (2d) 515]; *Schmidinger* v. *Chicago,* 226 U. S. 578 [33 Sup. Ct. 182, 57 L. Ed. 364, Ann. Cas. 1914B, p. 284]; *State* v. *Normand,* 76 N. H. 541 [85 Atl. 899, Ann. Cas. 1913E, p. 996]; *McDermott* v. *State,* 143 Wis. 18 [126 N. W. 888, 21 Ann. Cas. 1315]; 35 A. L. R. 782, note, 83 A. L. R. 1409, note.) Not only may the legislature, for the benefit of public health, regulate conditions and surroundings where food is manufactured, handled and sold for human consumption, but it may also reasonably control the business of manufacturing, producing and handling food under the police powers of the state to prevent fraud, so long as the operating rules which are adopted reasonably tend to prevent fraud and to promote the peace, health or general welfare of the public, provided they do not violate the provisions of the state or federal Constitutions. (2 Meigs' Constitution and Courts, p. 802.) In 11 American Jurisprudence, page 1053, section 289, it is said:

"The rule is established that all trades, callings and occupations may be regulated which affect the public health. . . . Callings relating to dealing in foodstuffs directly affect the public health and hence are regulated. Among the enterprises affected are bakeries, dairies, meat shops, and confectionaries.''

The rule regarding the necessity for the enactment of statutes adopted under the police power for public health or general welfare is expressed in 2 Cooley's Constitutional Limitations, eighth edition, page 1227, as follows:

" 'The doctrine that the police power is a law of necessity may well be said to furnish the key to what is within and what is without the boundaries of such power; not that a police

regulation to be legitimate must be an absolute essential to the public welfare, but that the exigency to be met must so concern such welfare as to suggest, reasonably, necessity for a legislative remedy.'

''The exercise of the power for the public welfare may inconvenience individuals, increase their labor, and decrease the value of their property. It is a matter resting in the discretion of the legislature, and the courts will not interfere therewith except where the regulations adopted are arbitrary, oppressive, or unreasonable. Their wisdom or expediency cannot be subjected to judicial review.''

It is frequently difficult to determine whether statutes enacted for public health or general welfare impose unnecessary and onerous burdens which deprive one of property without due process of law, or whether classifications of persons or property are reasonable under the circumstances of a particular case.

In 2 Cooley's Constitutional Limitations, eighth edition, page 813, it is said:

''A State may classify with reference to an evil to be prevented, and if the class discriminated against is, or reasonably might be, considered to define those from whom the evil mainly is to be feared, it properly may be picked out. A lack of abstract symmetry does not matter. . . . 'It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named. The State may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses.' ''

■ Questions regarding the exigencies which demand legislation to prevent fraud, trade abuses or unsanitary conditions which are dangerous to public health or detrimental to public welfare, are usually problems which must be determined by the legislature. (11 Am. Jur., p. 1065, sec. 296.) Every reasonable presumption in that regard is indulged in support of the conclusions reached by the legislature. In the absence of a clear showing to the contrary, a court may not substitute its judgment in that regard for that of the lawmaking power. If any reasonable cause appears for the classification adopted by the legislature it will be upheld. (11 Am. Jur., p. 1088, sec. 306.) A statute which

is enacted under the police power for the avowed purpose of regulating the manufacturing and marketing of a common food product in the interest of public health and general welfare should be upheld unless it clearly appears to be unconstitutional. (*In re Sutter-Butte By-Pass Assessment No. 6,* 191 Cal. 650, 671 [218 Pac. 27].)

In *Reid* v. *State of Colorado,* 187 U. S. 137 [23 Sup. Ct. 92, 47 L. Ed. 108, at page 116], it is said in that regard:

"The principle is universal that legislation, whether by Congress or by a state, must be taken to be valid, unless the contrary is made clearly to appear; and as the contrary does not so appear, the statute of Colorado is to be taken as a constitutional exercise of the power of the state."

Regarding the discretion of the legislature to determine what trade evils require regulation, it is said in 1 Cooley's Constitutional Limitations, eighth edition, page 264:

"What is for the public good, and what are public purposes, and what does properly constitute a public burden, are questions which the legislature must decide upon its own judgment, and in respect to which it is vested with a large discretion which cannot be controlled by the courts, except, perhaps, where its action is clearly evasive, and where, under pretense of lawful authority, it has assumed to exercise one that is unlawful."

In *Schmidinger* v. *City of Chicago, supra,* the Supreme Court said:

"This court has frequently affirmed that the local authorities entrusted with the regulation of such matters and not the courts are primarily the judges of the necessities of local situations calling for such legislation, and the courts may only interfere with laws or ordinances passed in pursuance of the police power where they are so arbitrary as to be palpably and unmistakably in excess of any reasonable exercise of the authority conferred."

It is conceded that a high degree of care should be exercised in manufacturing and handling food prepared for human consumption, among the commonest of which is bread, to prevent contamination, infection and disease. The petitioner in this case does not challenge the Sanitary Bakery Law as a whole. It is merely contended that section 8 of that act, which requires a label or trademark indicating the name of the manufacturer thereof to be affixed to each loaf

of bread, as distinguished from rolls or buns, is unconstitutional. We are of the opinion the bakery statute is not only within the police power of the legislature to enact, but that it is a necessary, wise and valuable regulation of an important industry for the preservation of public health and welfare. Probably no other item of food furnishes so large a part of the diet of human beings as does bread. A tremendous quantity of it is manufactured, sold and consumed daily throughout the civilized world. It is sold over counters, carried by hand and delivered by machines in crowded cities and in the highways and byways of remote districts. Bread is susceptible to contamination from the presence of so-called "rope" which is caused by a slimy substance permeated with bacillus panis. Carelessness or fraud may lead to the use of impure or deleterious ingredients in the making of bread. Negligence in permitting glass to be mixed with the dough and baked in bread renders the manufacturer liable for damages to a customer who is injured thereby. (*Dryden* v. *Continental Baking Co.*, 11 Cal. (2d) 33 [77 Pac. (2d) 833].) How important it is to employ every precaution to procure pure, wholesome bread for the multitude of those who use it as their staple article of food. It is a reassuring precaution against contamination and infection in bread, cakes, cookies, buns, pies and all sorts of pastry to find them in stores neatly wrapped for sale in wax paper or cellophane. It is a guarantee of comparatively pure, wholesome food free from germs, dirt and contamination.

We may not say, in view of the apparent necessity for great precaution in the manufacture and sale of bread, that the requirement to place upon each loaf a label or trademark identifying the maker of the bread is an unwarranted, onerous burden upon the baker; that it is an unreasonable regulation or that it deprives him of property without due process of law in violation of the Fourteenth Amendment of the federal Constitution. A label containing the name or trademark of the manufacturer is required to be placed on each loaf which is sold through an intermediate dealer, and not directly from the baker to the consumer, to enable the purchaser or the officers to trace the identity of the manufacturer when the bread is found to be unfit for human use on account of violations of the provisions of the act. Except for the presence of the label or trademark, a manufacturer who is

guilty of wilful violation of the statute or of fraud in making or marketing the bread might escape the penalty of his offense and continue to perpetrate the wrong to the detriment of the public. The presence of the label or trademark furnishes the means of identifying the manufacturer and of enforcing the law.

Section 8 of the act is not unconstitutional or ineffectual merely because the address of the manufacturer is not also required to be placed on the label or trademark. The provision would make the discovery of the manufacturer easier and more certain. The legislature no doubt assumed that when the consumer bought his bread directly from the manufacturer he could readily identify him, and when the consumer purchased bread from an intermediate dealer, who might be handling the bread of several manufacturers, the dealer could more certainly identify each producer by means of the labels or trademarks contained on the loaves. At least the presence of the labels or trademarks would aid in identifying the manufacturers of deleterious bread. The owner of a trademark may be easily traced. An individual or firm may preserve the exclusive right to use a particular trademark. (*The Ida May Co., Inc.,* v. *Ida May Ensign,* 20 Cal. App. (2d) 339 [66 Pac. (2d) 727] ; sec. 655, Civ. Code; sec. 3197, Pol. Code.) A trademark may become a public record by recording it with the Secretary of State. (Sec. 3197, Pol. Code; 24 Cal. Jur. 623, sec. 11.)

We are of the opinion section 8 of the Bakery Act is not discriminatory or unconstitutional merely because rolls are excepted from the requirement that each loaf of bread shall have attached to it, when sold through an intermediate dealer, a label or trademark indicating the manufacturer thereof. There appears to be good reason for classifying loaves of bread as distinguished from smaller rolls. Bread is ordinarily sold in loaves. The great bulk of bread which is sold daily upon the market is in the form of loaves of a specified and uniform size and weight. The very fact that bread is usually sold in loaves, that by far the greater proportion of bread is marketed in that form, has been held to furnish sufficient ground for upholding such a classification as reasonable. The rolls are baked with a hard crust which entirely surrounds them, and which renders them less susceptible to contamination from absorption or germs acquired

in handling them. The large loaf, as a rule, has a crust only on the top and bottom. It contains a greater mass of porous substance and is, therefore, much more liable to deterioration or infection from surrounding conditions or from handling. We are not warranted in holding that section 8 of the act is void because it applies only to loaves of bread as distinguished from rolls.

There is nothing in the act to prohibit the sale of so-called "stale bread" which is wholesome, in the same manner that fresh bread may be sold. The act merely precludes a purchaser of bread or pastry from returning or exchanging wholesome food which has not been used. That provision was undoubtedly enacted to minimize or prevent the danger of reselling bread which might be more likely to have become infected by unsanitary conditions in private homes or public eating places. The act does not prohibit the sale by either the manufacturer or a dealer of old or stale bread which is wholesome.

In support of his contention that section 8 of the act is unconstitutional for the reason that it imposes upon the baker onerous burdens by requiring the labels or trademarks designating the manufacturer of bread to be attached to each loaf, and because the exclusion of bread rolls from that requirement is an asserted unreasonable classification of commodities, the petitioner relies on the following cited authorities: *In re Foley*, 172 Cal. 744 [158 Pac. 1034, Ann. Cas. 1918A, 180], *Ex parte Hayden*, 147 Cal. 649 [82 Pac. 315, 109 Am. St. Rep. 183, 1 L. R. A. (N. S.) 184], *Ex parte Drexel*, 147 Cal. 763 [82 Pac. 429, 3 Ann. Cas. 878, 2 L. R. A. (N. S.) 588], and *Jewett Bros. & Jewett* v. *Smail*, 20 S. D. 232 [105 N. W. 738].

We are of the opinion the preceding cases are not in conflict with what we have said regarding the constitutionality of the Sanitary Bakery Law of California. Those cases may be readily distinguished on principle from the present proceeding, with the possible exception of the South Dakota case. In the Smail case, *supra*, it was held that a statute which made it unlawful to sell or offer for sale any article of prepared foods unless the true name and address of the manufacturer were plainly printed on the package or container, constituted *an unreasonable interference with interstate and foreign commerce*. Interstate commerce is not in-

volved in the present action. No question was raised in this case regarding the effect of the Bakery Act upon interstate commerce.

In the Foley case, *supra,* it was held that a statute was unreasonable, onerous in the burdens which it imposed, and unconstitutional, which required a poultry dealer to clearly mark upon each egg received by him from outside the state of California the word "Imported", to display in his place of business a conspicuous sign reading, "Imported Eggs Sold Here", and requiring him to regularly report to the state board of health the number and dates of his receipts and sales of eggs. It was held that these requirements infringed upon interstate commerce, and that they did not reasonably tend to prevent fraud or deception in the sale of eggs.

However, in the later case of *In re Bear, supra,* the Supreme Court definitely held that a statute is neither unreasonable, discriminatory nor unconstitutional, which requires every person who sells imported, liquid or dried eggs (Stats. 1931, p. 584) to have such products first inspected and certified, to clearly mark each package or container as "imported egg products", and to conspicuously display in his place of business a sign reading, "Frozen Eggs . . . imported from without the United States used here".

The case of *Ex parte Drexel, supra,* relied on by the appellant, appears to have no bearing upon the question of requiring a label or trademark identifying the manufacturer of bread to be placed on each loaf sold. That opinion does appropriately quote certain fundamental principles which are involved in the extent to which the legislative power may invade private rights to own and control property. But those principles do not conflict with what we have previously said regarding the Sanitary Bakery Law. The Drexel case merely involved the validity of the Anti Trade Stamp or Coupon Act of California. (Stats. 1905, p. 67.) That act was held to be unconstitutional because it interfered with the right of an individual to lawfully contract. The court said:

"An ordinary trading-stamp or coupon is in substance a mere form of allowing discounts on cash payments, and its issuance is entirely harmless *and within the constitutional right of contract. . . .*

"Our conclusion is, that the said act of March 7, 1905, so far as it undertakes to make the issuance of trading-stamps and coupons such as were used by the petitioners herein a misdemeanor, is unconstitutional and void."

Nor is the case of *Ex parte Hayden, supra,* upon which the petitioner also relies, in conflict with what we have said. That case is clearly distinguishable from the present proceeding. The petitioner, Hayden, was convicted of violating a statute which required every person who shipped fruit from any point in this state to conspicuously stamp, stencil or label every box, package or barrel with a statement designating "the county and immediate locality in which such fruit was grown". (Stats. 1903, p. 338.) That act did not purport to have been passed in the interest of health or public welfare. It did not help to identify the manufacturer or packer. It had no relation to or tendency to prevent fraud, deceit, or the sale of inferior, defective or unwholesome fruit. The court said in that regard:

"It is plain, therefore, that the act was not designed to prevent either false labeling or the shipping of diseased fruit, and, if so designed, it is both meaningless for this purpose and burdensome for all others."

The court did appropriately say in that case, after mentioning the general purposes for which the legislature is authorized to enact laws under its police powers for public health, peace, morals or general welfare, that:

"The legislature, under the guise of police regulations, cannot enact laws which do not pertain to one or the other of these objects, and which impose onerous and unnecessary burdens upon business and property."

With that statement we are in hearty accord. But we are of the opinion it does not apply to the clear purpose of the legislature in the present case to wisely and reasonably regulate the manufacture and sale of pies and pastry for the general health and welfare of the public.

Many authorities support the constitutionality of acts which require the attachment of labels to packages of commodities disclosing the ingredients or contents thereof. Such statutes are uniformly upheld as a proper exercise of the police power in the interest of preserving the public health. (57 A. L. R., p. 686, note.)

In *Polk Co.* v. *Glover*, 22 Fed. Supp. 575, the constitutionality of an act was upheld which required every container used for citrus fruit juice produced in the state of Florida to have stamped on the tin or glass the word "Florida". It was held to be unlawful for any person to can for sale juice from any fruit grown in that state, without so marking the container.

In the following New York and Minnesota cases it was held that statutes requiring the placing of labels on packages of food materials showing the ingredients, the names and addresses of the manufacturers thereof were not unconstitutional, discriminatory nor in conflict with personal rights to conduct legitimate private business or to contract in relation thereto. (*People* v. *Bishopp*, 106 App. Div. 266 [94 N. Y. Supp. 773] ; *People* v. *Windholz*, 92 App. Div. 569 [86 N. Y. Supp. 1015] ; *State* v. *Sherod*, 80 Minn. 446 [83 N. W. 417, 81 Am. St. Rep. 268, 50 L. R. A. 660].)

We conclude that the requirement of section 8 of the Sanitary Bakery Law to affix labels or trademarks identifying the manufacturer of loaves of bread which are sold through an intermediate dealer or agent is a reasonable regulation of the bakery business to prevent fraud and to procure wholesome food products. It does not impose on the business onerous burdens, or infringe upon personal rights to conduct legitimate private business. Nor does it deprive the owner of property without due process of law.

The writ is denied and the petitioner is remanded.

Pullen, P. J., and Tuttle, J., concurred.