219 P.2d 776

## STATE v. DOUBLE SEVEN CORPORATION.

No. 1000.

Supreme Court of Arizona.

June 19, 1950.

Warren L. McCarthy, County Atty., of Phœnix, for plaintiff.

Jerman & Jerman, of Phœnix, for defendant.

DeCONCINI, Justice.

This case is here before us upon questions of law certified by the Superior Court for the County of Maricopa, by virtue of section 44-2401, A.C.A. 1939. On June 15, 1949, the county attorney for Maricopa County, by direct information, accused the defendant, Double Seven Corporation, an Arizona corporation, of a misdemeanor in violating the provisions of Chapter 50, Article 13, A.C.A. 1939, entitled, "Horsemeat for Human Consumption", and hereinafter referred to as the horsemeat act.

The information contained two counts. The first count was entitled, "Misbranding Horse Meat and Horse Meat Products." Its salient features are as follows:

"The said Double Seven Corporation, on or about the 25th day of April, 1949, and before the filing of this information at and in the County of Maricopa, State of Arizona, did then and there wilfully and unlawfully keep and offer for sale and sell horse meat and horse meat products for human consumption, unlawfully marked, branded, tagged and labeled, to-wit:

"That the said Double Seven Corporation, on or about the 25th day of April, 1949, as operator or proprietor of a market where meat products were sold, at 520 West Jackson Street in the City of Phœnix, Maricopa County, Arizona, did at the premises known and designated as 22 North Fifth Street in the City of Phœnix, Maricopa County, Arizona, offer for sale and sell horse meat and horse meat food products, to-wit: cube or chicken fry steaks and ground horse meat sold under the trade name of hamburger, which said horse meat and horse meat food products were not conspicuously branded, marked, tagged or labeled 'horse meat' or 'horse meat products' on each standard cut thereof, or at all, and which said horse meat and horse meat food products were not labeled with a green label bearing the words 'horse meat', followed by 'horse meat or horse meat food products contained herein has been inspected and passed by the State of Arizona', or at all, all in violation of Section 50-1306, Arizona Code Annotated, 1939.''

The second count was entitled, "Possession of Unstamped Horse Carcasses," and charged the defendants as follows:

"For a further and separate cause of action, being a different offense of the same class of crimes and offenses as the charge set forth in Count I hereof, the said Double Seven Corporation is accused by this information of the crime of *possession of unstamped horse carcasses,* and misbranding horse meat products as provided for in Section 50-1306, Arizona Code Annotated 1939, a misdemeanor, committed as follows:

"That the said Double Seven Corporation, on or about the 18th day of May, 1949, and before the filing of this information at and in the County of Maricopa, State of Arizona, did then and there wilfully and unlawfully keep and offer for sale as a licensed slaughterer and packer, horse meat and horse meat products for human consumption, to-wit:

"That the said Double Seven Corporation, on or about the 18th day of May, 1949, at certain premises known and designated as Double Seven Corporation, located at 520 West Jackson Street in the City of Phœnix, Arizona, did keep, have, and offer for sale, carcasses of horses slaughtered for human consumption, which said carcasses were not stamped on each standard cut thereof 'horse meat', or at all, and did keep, have and offer for sale, horse meat products, which said horse meat prod-

ucts were not conspicuously branded, marked, tagged or labeled 'horse meat' or 'horse meat products' or at all, contrary to Section 50-1306, Arizona Code Annotated 1939, contrary to the form, force and effect of the statute in such cases made and provided and against the peace and dignity of the State of Arizona."

Defendant moved to quash the information. The said motion was heard and denied by the trial court. On July 11, 1949, the trial court, with defendant's consent, certified the matter to us for determination of two doubtful questions of law.

The two questions of law certified to us for determination are as follows: " * * * (1) whether or not the Defendant was charged by the information with the commission of an offense under Section 50-1306, Arizona Code Annotated, 1939, as set forth in each of the counts in said information, and (2) whether or not Chapter 50, Article 13 of Arizona Code Annotated, 1939, is unconstitutional in whole or in part. * * *"

█ Our first consideration is directed toward a consideration of the question of the legal sufficiency of the information. The defendant contends that the information was faulty in that the caption labeled the defendant's actions as misbranding while the body of Count I actually charged the defendant with the sale of horsemeat not branded at all. An erroneous caption on an information will not vitiate the information; the facts pleaded therein are

determinative of its validity or invalidity. Faber v. State, 62 Ariz. 16, 152 P.2d 671; Clark v. State, 53 Ariz. 416, 89 P.2d 1077; Ex parte Harrison, 55 Ariz. 347, 101 P.2d 457.

█ The next contention of the defendant is that the information charges it only with violating the provisions of section 50-1306, A.C.A. 1939, and does not allege any violation of section 50-1307, A.C.A. 1939. The sections referred to above are as follows:

"50-1306. Horsemeat to be labeled.—(a) All carcasses of horses slaughtered for human consumption shall be stamped, on each standard cut thereof, 'Horsemeat.' All horsemeat food products shall be conspicuously branded, marked, tagged, or labeled: 'Horsemeat,' or 'Horsemeat Product.'

"(b) The labels for horsemeat or horsemeat food products thereof shall be printed on light green paper, and shall bear the words 'Horsemeat' or 'Horsemeat Product,' followed by: 'The horsemeat or horsemeat food product contained herein has been inspected and passed by the state of Arizona.'

"50-1307. Retail dealers—Restaurants— Hotels—Regulations.—(a) All horsemeat or horsemeat products sold at retail must be sold from a separate compartment, which shall contain a sign, with letters not less than two (2) inches high, conspicuously placed, marked 'horsemeat.' * * *"

Defendant's contention is that there is no violation of the act charged unless the in-

**292**

formation alleges a violation of section 50-1307, supra. There is no merit to this proposition. It is obvious that there can be a violation of section 50-1306, supra, without reference to section 50-1307, supra. It is equally obvious that the provisions of section 50-1306, supra, envisage a sale of the horsemeat or horsemeat products, by the use of the following phrase, "All carcasses of horses slaughtered for human consumption."

■ Defendant relies on the following proposition of law: "The information must indicate the crime charged, must contain a statement of the essential elements of the indicated crime and must be sufficiently definite to apprise the accused of what it must be prepared to meet, and protect it against further prosecution of the same offense."

■ This proposition of law is sound. The information in this case is legally sufficient, however, to meet every test above set out. The trial court was correct in denying defendant's motion to quash the information.

■ The second and final question of law certified has to do with the constitutionality of the horsemeat act. Defendant cites two propositions of law in support of his contention that the horsemeat act is unconstitutional. They are as follows:

"In order that an inspection law may be valid, the fee imposed must be reasonable; must have reference to the cost of service;

otherwise it becomes a revenue measure which cannot be justified as a valid exercise of the state's police or taxing power.

"The equal protection clause of the fourteenth amendment of the constitution of the United States, and Article 2, section 13 of the Arizona Constitution demand that statutes passed under the police power have some natural and reasonable basis and relationship to the object to be accomplished and cannot be discriminatory, capricious or unreasonable."

We have no objection to the defendant's proposition of law concerning the validity of inspection laws. By affidavit, accompanying the record to this court, of one M. G. McCreight, president of the defendant corporation, it appears that of the $2 inspection fee per animal slaughtered, only $1 thereof is paid to the inspector. The defendant argues that since only $1 is paid to the inspector, the fee bears no relation to the expense of administering the act and is unreasonable. It is well known that the remuneration received by the inspector is only one of the items making up the expense of administering the horsemeat act. The amount of the other items contributing to the expense of enforcement and administration are not disclosed by the record.

■■ The state has the right under its police power to regulate the livestock industry, particularly that portion devoted to the slaughter and sale of animals for human consumption. Tovrea Packing Co. v. Livestock Sanitary Board of Arizona, 44

Ariz. 151, 34 P.2d 420. It is a general rule that a reasonable fee may be imposed for the carrying out of any law passed by virtue of the state's police power; provided the fee is of such an amount that it is obvious it is for defraying of expenses only and not in reality a revenue measure. Smith v. Mahoney, 22 Ariz. 342, 197 P. 704; Tovrea Packing Co. v. Livestock Sanitary Board of Arizona, supra.

The burden of proof as to the unconstitutionality of a statute rests upon the defendant who alleges its unconstitutionality. American Federation of Labor et al. v. American Sash & Door Co. et al., 67 Ariz. 20, 189 P.2d 912. There is no proof that the inspection fee is greater than the total expense of enforcing the inspection provision of the horsemeat act. Every reasonable doubt is to be resolved in favor of the constitutionality of legislative enactments, and before a statute be declared to be unconstitutional it should clearly appear that it cannot be upheld by any reasonable intendment or presumption. Smith v. Mahoney, 22 Ariz. 342, 197 P. 704; Ex parte McNeal, 32 Cal.App.2d 391, 89 P.2d 1096.

The last problem to be considered is that raised by defendant's third proposition of law, hereinabove quoted. This is an attack on the constitutionality of the horsemeat act on the ground that requiring horsemeat to be slaughtered in an establishment separate and apart from other livestock is a denial of the equal protection of the laws guaranteed by the 14th amendment to the Federal Constitution. As before mentioned, whenever the constitutionality of legislation is in question every intendment and every question will, whenever possible, be resolved in favor of its constitutionality.

We are convinced that the provision which defendant claims is a denial of the equal protection clause of the 14th amendment, being section 50-1304(a), A.C.A. 1939, is constitutional and a valid exercise of the state's police power. The state has the power to act in the interest of the public health, safety, morals and other phases of public welfare. American Federation of Labor et al. v. American Sash & Door Co. et al., supra.

In this case the public interest which this legislation is seeking to safeguard is that of protecting it from deception and fraud. By requiring horsemeat to be slaughtered in separate establishments the legislature sought to make it more difficult for the unscrupulous to sell horsemeat products in place of other meat products, or the possibility of the occurrence of innocent mistakes by confusing horsemeat with other meats. The prevention of fraud, deception or mistake is a legitimate exercise of the state's police power. Department of Financial Institutions v. General Finance Corp., Ind.Sup., 86 N. E.2d 444, 10 A.L.R.2d 436.

In the exercise of its police powers the state has a wide scope of discretion to classify, in that regard, but its

294

action is avoided, by the equal protection clause of the 14th amendment, when what is done is without reasonable basis, and is, therefore, arbitrary. Whitney v. People of State of California, 274 U.S. 357, 47 S. Ct. 641, 71 L.Ed. 1095. In other words, a classification must be based on some natural principle of public policy and must be reasonably intended to effect some result which is naturally within the state's police power. Hazas v. State, 25 Ariz. 453, 219 P. 229.

It is our opinion that each count of the information charges an offense under the horsemeat act and that the said act is not unconstitutional as urged by the defendant.

Remanded to the trial court for disposition of the case on its merits in the light of the present determination of the certified questions of law.

La PRADE, C. J., and UDALL, STANFORD and PHELPS, JJ., concur.