NAZRO and others vs. THE MERCHANTS' MUTUAL IN-
SURANCE COMPANY OF MILWAUKEE.

Legislative enactments are not, any more than other writings, to be defeated on
account of mistakes, errors or omissions, provided the intention of the legis-
lature can be collected from the whole statute.

If a mistake in an act of the legislature renders the intention doubtful, the courts
may look to the title and preamble, as well as to the body of the act, for as-
sistance in determining such intention.

In the case of a private law, the court will presume that its subject is expressed
correctly in its title, in conformity to the provisions of section 18, Article IV
of the constitution of this state.

Chapter 102 of the Private and Local Laws of 1860, entitled "An act to amend
an act to incorporate the *Merchants'* Mutual Insurance Company of Milwau-
kee and the acts amendatory thereof," by its 1st section provides that if any
holders of the outstanding certificates issued as provided in section 12 of the
charter of the *Milwaukee* Mutual Insurance Company of Milwaukee, shall,
within &c., object to the adoption by said company, of an act entitled "An
act to amend an act entitled an act to incorporate the *Merchants'* Mutual In-
surance Company, and acts amendatory thereof," approved April 15, 1858,
and the act entitled "An act to amend an act entitled an act to incorporate the
*Merchants'* Mutual Insurance Company of Milwaukee, approved January 31st,
1860," and to the re-organization of said company as provided in said acts, such
holders &c. The several acts referred to in said title and in the 1st section
of said chapter, are correctly cited by their titles and dates. *Held,* that the
word "*Milwaukee*" before the word "Mutual" in the first section of said chap-
ter 102, must be regarded as a mere clerical error.

The capital stock of an incorporated company is a trust fund, the proper applica-
tion of which courts of equity will enforce by virtue of their inherent ju-
risdiction over trusts and frauds.

The acts of April 15th, 1858, and January 31st, 1860, amendatory of the act of
February 10th, 1847, which incorporated the "Merchants' Mutual Insurance
Company of Milwaukee," in effect granted authority to the trustees of said
company to organize a new company for the same general purpose but upon
entirely different principles, with the privilege to such members of the old
company as wished, to convert their premium certificates into the stock of
the new; failing to do which they were to have no voice in the management
of its affairs. A court of equity would grant relief to the dissenting stock-
holders, by compelling the company to refund the value of their premium
certificates, in the absence of any special statute for that purpose.

Chapter 102, Private Laws of 1860, which makes special provision for the relief
of such dissenting stockholders, is a valid enactment.

In the case of a petition by such dissenting stockholders for relief under the
provisions of that chapter, the company may traverse the facts stated in such
petition, or aver new matter, or take any other step necessary to an equitable
determination of the controversy; and the court having jurisdiction of the
cause may decide the questions thus raised.

On an application for judgment upon the report of appraisers appointed pursu-

June Term,
1861.

NAZRO et al.
v.
MERCH'TS MUT.
INS. CO.

ant to said act, the court may affirm, reject or modify the report, or recommit the case to the appraisers, and render such final judgment as justice requires.

APPEAL from the Circuit Court for *Milwaukee* County.

*Henry J. Nazro* and others, holders of certificates of the Merchants' Mutual Insurance Company of Milwaukee, made application to the circuit court for Milwaukee county, in their own behalf and in behalf of such other holders of certificates of said company as might apply to become parties to the proceeding, and alleged in their petition the following facts : 1. That they were severally the lawful holders and owners of certificates of premiums earned by said company, issued pursuant to section 12 of the charter of said company, entitled " An act to incorporate the Merchants' Mutual Insurance Company of Milwaukee," approved February 10, 1847, to the amount of the several sums in said petition stated. 2. That they objected to the adoption by said company of the act entitled " An act to amend an act entitled an act to incorporate the Merchants' Mutual Insurance Company and the acts amendatory thereof," approved April 15, 1858 ; and also objected to the adoption by said company of " An act to amend an act entitled an act to incorporate the Merchants' Mutual Insurance Company of Milwaukee, and the several acts amendatory thereof," approved January 31, 1860 ; and objected to the re-organization of said company pursuant to said acts or any of them. 3. That said company had accepted said acts, and had re-organized said company under them, and was proceeding to do business as an insurance company pursuant to said acts. Prayer, that the court would appoint three disinterested persons, residents of the city of Milwaukee, to examine the affairs and appraise the assets of said company, pursuant to an act entitled " An act to amend an act entitled an act to incorporate the Merchants' Mutual Insurance Company of Milwaukee, and the acts amendatory thereof," approved April 2d, 1860 ; that the court by such order would designate the time and place of meeting of said appraisers; that they, before entering upon their duties, take and subscribe an oath, &c.; that they or any two of them examine the affairs of said company and appraise the value

of the assets of said company, held and owned by it at the time of the election of seven directors in pursuance to the amendments of the charter of said company, approved April 18th, 1858, and January 31st, 1860, exclusive of the stock subscriptions to the new organization of said company; and that the court in said order further direct that said appraisers, within thirty days after their appointment, file with the clerk of said court a report of their doings, stating therein the value of said property of said company, its indebtedness, and the value of said certificates at the time of the election aforementioned, and the sum to which, at the said valuation, each owner of a certificate or certificates of premiums might be entitled as payment therefor; that upon the coming in of said report, upon due proof of service of a copy thereof upon said company, and notice of application for judgment thereon, the court would enter judgment against said company in favor of said petitioners respectively for the value of their respective certificates as stated in said report, &c.; and that in case of default in the payment of said judgment, the court would appoint a receiver, &c.

Due notice of this application having been given to the defendant, the court, after a hearing, made an order appointing three appraisers in accordance with the prayer of the petition. From this order the defendant appealed.

*H. F. Prentiss* and *Mat. H. Carpenter*, for appellant:

1. Chap. 102, Laws of 1860, is void for uncertainty, or rather has no applicability to the appellant. The first section provides that "if any holder or holders of the outstanding certificates issued as provided in section 12 of the charter of the *Milwaukee* Mutual Insurance Company of Milwaukee, shall object to the adoption by *said* company of an act entitled "An act to incorporate the *Merchants'* Mutual Insurance Company, and acts amendatory thereof," approved April 15, 1858, and the act entitled "An act to amend an act entitled an act to incorporate the *Merchants' Mutual Insurance Company of Milwaukee*," &c., such holders may apply &c. A right is there given to the holders of certificates issued by the *Milwaukee* Mutual Insurance Company of Milwaukee, on condition that they object to the adoption by said company of

June Term,
1861.

Nazro et al.
v.
Merch'ts Mut.
Ins. Co.

two other acts passed in relation to two other companies. If it is said that this is a mistake in the act, still it is not for the court to correct the mistake. *King vs. Inhabitants of Mabe*, 1 Har. & Woll., 460; *Same Case*, 3 Ad. & Ell., 531. 2. The act is unconstitutional. (1) It entirely changes the rights of the stockholders, and turns the stock of a part of them into cash to be paid with the property of the others. (2) The company can at no stage of these proceedings con‑ test or litigate anything. Before the appraisers they are not to be heard; no proof can be given, no issue is made; and on the coming in of the report the act is imperative that the court shall render judgment.

*Emmons, Van Dyke & Hamilton*, for respondents:

1. If the mistake in the first section of the act creates any ambiguity, we may resort to the title to clear it up. *Ogden vs. Strong*, 2 Paine C. C. Rep., 589; *Blanchard vs. Sprague*, 3 Sumner C. C. R., 279; *Madison Pl. R. Co. vs. Reynolds*, 3 Wis., 287; Sedgwick on Stat. and Con. Law, pp. 50, 51, 54, et seq. But the subsequent parts of the act, the reference to the former amendatory acts, their subject matter and dates, leave no room for doubt as to the intent of the legis‑ lature. *Madison Pl. R. Co. vs. Reynolds, supra;* Sedgwick on Stat. and Con. Law, pp. 237-9. 2. The legislature had power to pass the act of April 2, 1860. Sec. 17 of the orig‑ inal charter of the company provides that it "may at any time be amended, altered or repealed by the legislature of Wisconsin." See also sec. 1 of Art. I of the constitution of this state; 5 Barr, 204; *Schenectady & Saratoga Pl. R. Co. vs. Thatcher*, 1 Kern., 102; *Pratt vs. Brown*, 3 Wis., 603-11; *Milwaukee & N. I. R. R. Co. vs. Field*, 12 Wis., 340, and ca‑ ses there cited in the brief of the counsel for the appellant in that case.

November 2.      *By the Court*, Dixon, C. J. The objections to the act of April 2, 1860, are too technical and evasive. Legislative enactments are not to be defeated on account of mistakes, errors or omissions, any more than other writings, provided the intention of the legislature can be collected from the whole statute. If the mistake renders the intention doubt‑

ful, we may look to the title and preamble, as well as the body or purview of the act, for assistance in arriving at it; and not until all these fail can the act be held inoperative. The act before us is private in its nature; and hence the title becomes an important source of information in case of ambiguity. The constitution (sec. 18, Art. IV) declares that "no private or local bill which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title." It must be presumed that due regard is paid to this provision by the legislature, and therefore that the subject of the bill is truly expressed in the title. The title is consistent with the body of the act, and correctly recites the title of the previous act—which it professes to amend, and in which the name of the company is correctly stated. This alone is sufficient to remove all difficulty in determining what insurance company the legislature referred to. But more than this, the titles of both the former amendatory acts, with the dates of their approval, are correctly stated in the body of the bill; and its subject matter clearly indicates that no others could have been intended. Under these circumstances there can be no doubt that the use of the word "Milwaukee," in describing the company, should be disregarded as a mere clerical mistake.

It seems to be conceded on both sides, that it was competent for the legislature, both by virtue of the power reserved in the organic act of the company, and of section 1 of Article XI of the constitution, to pass the amendatory acts of April 15, 1858, and January 31st, 1860, by which the trustees were authorized to change the plan and organization of the company from the mutual to the joint stock system. Indeed, with a single exception, none of their provisions appear liable to any constitutional objection whatever. The first section of the first named act declares that the *trustees* may adopt the mode of insuring practiced by insurance companies; and may open books for the subscription of stock, at such time and place and under such restrictions as they may deem proper. This is a grant to the trustees of new and distinct powers, such as they could not before have exercised, either as a matter of corporate authority or of legal

June Term,
1861.

Nazro et al.
v.
Merch'ts Mut.
Ins. Co.

or constitutional right, as between themselves or the corporation and the shareholders.   The latter might have objected to it as a violation of the contract under which they became members of the company.   But for the reserved power of the legislature to alter or repeal the charter, this objection would be still open to them.   If the act had declared that the members might adopt a new mode of insurance, and open books for the subscription of stock, no exception could have been taken to it.   It would then have required the assent of all the members to have accomplished the proposed change.   For it is to be observed that the act is permissive merely and not compulsory.   It is in the nature of a license to the trustees, and not an exercise of the reserved coercive power of the legislature to change or modify the organic laws of corporations.   If, therefore, it had been given to the members to determine whether the change should be made, no objection could have existed.   It is in conferring this power upon the trustees that the rights of the former are infringed, if at all.

And this *permissive* feature of the acts has, in my judgment, a very important influence upon the questions we are considering.   It shows that they were not enacted through motives of public policy or necessity, nor at the suggestion of the legislature itself; but that they were solicited and procured by some interested private parties.   The plain inference is, that the legislature was set in motion by the trustees and such other members of the company as were desirous of effecting the change, and that the acts were passed at their request.   Regarded in this light, the remedy afforded by the act of April 2d, instead of being the harsh and oppressive proceeding described by the appellant's counsel, appears very equitable and just.   The trustees and assenting members, or what is the same, the company under its new organization, being themselves the movers, and having set on foot measures by which the dissenting members have been deprived of the chartered rights and privileges on the faith of which they invested their money, ought not to object to any fair proceeding by which they seek a return of it.   Their claims are most equitable, and every principle of nat-

ural justice would seem to require that they should be pro-
tected. The amendatory acts were, in effect, a grant of au-
thority to the trustees to organize a new company for the
same general purpose but upon entirely different principles,
with the privilege to such members of the old company as
wished, to convert their premium certificates into the stock
of the new. The new company was to take the place of the
old, which was to cease, and such holders of premium certif-
icates as refused to convert them into stock, were to have no
voice in the management of its affairs. The result is that
the new organization has, without their consent, become pos-
sessed of so much of the funds of these dissenting certifi-
cate holders, which it is against conscience for it to retain.
The act, therefore, is nothing more than a special remedy to
enforce the performance of a duty which courts of chancery,
upon principles of natural equity, would have enforced with-
out it. We see no substantial objection to the form of pro-
ceeding prescribed by it. The appraisers to examine the
affairs and determine the value of the assets of the company,
are but substitutes for the commissioner to whom the court
might have referred the same questions if a suit in equity
had been instituted. The proceeding is in this respect an-
alogous to that in partition of lands, where three disinteres-
ted freeholders are appointed to make division according to
the rights and interests of the parties.

Nor is it liable to the objection that it transfers the prop-
erty of one person to another without right; nor that it com-
pels one joint owner of property to buy the interest of an-
other, on pain of having a judgment rendered against him,
and the joint property sold to satisfy it. It is a proceeding
on the part of the dissenting members to get their own.
The trustees, by their conduct, have made a distribution ne-
cessary and proper. They have appropriated the property
without the consent of the owners. It is like the sale of
lands where a division is impracticable.

Neither can it be objected to the proceeding, that it pro-
vides for the rendition of a judgment without the interven-
tion of a court, and without a hearing on the part of the
company. If this were so—if it took a judicial question

June Term,
1861.

Nazro et al.
v.
Merch'ts Mut.
Ins. Co.

out of the hands of the courts, and committed it finally to the decision of three private individuals—or if it provided that the company should not be heard, it would be clearly invalid. But it does not. It provides that a copy of the petition, with notice of the time and place of application for the appointment of appraisers, shall be served on the company in the manner prescribed by law for the service of summons on domestic corporations. This implies that the company is to be heard—that it may be present and make such objections as it deems proper, and that they are to be passed upon by the court. The act is not very specific and accurate in details, but we have no doubt that the company may, in some suitable form, traverse the facts stated in the petition, or aver new matter, or take any other step necessary to an equitable and fair determination of the controversy; and that the court may decide the questions thus raised. The same is true of the application for judgment on the report of the appraisers. The company are to have notice of it; and why notice, if it cannot appear and object? And why object, if the court has no power to decide upon the objections? It is inconsistent with the language of the legislature, and cannot be supposed to have been the intention, that the court was to affirm the report and enter judgment, right or wrong. On the contrary, the reasonable intendment is that the court is to exercise its general discretionary powers as in other cases, and affirm, reject or modify the report, or recommit the case to the appraisers, and render such final judgment as justice requires. See *Dawson vs. Shaver*, 1 Blackf., 204.

The objection that the act violates the constitution, by providing for a trial and judgment without the intervention of a jury, is not insisted upon by the appellant's counsel. If it were, it has already been answered. The record shows a substantial claim for equitable relief, as it was administered in courts of chancery before the constitution was adopted. The capital stock of incorporated companies is a trust fund, the proper application of which courts of equity will enforce by virtue of their inherent jurisdiction over trusts and frauds. Willard's Eq., 739-40.

Order affirmed.