McDERMOTT, Plaintiff in error, vs. THE STATE, Defendant in error.

GRADY, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 21—May 24, 1910.*

*Constitutional law: Pure food laws: State legislation: Validity: Interstate commerce: Police power of state: Protection against fraud: Labeling syrups: Glucose mixtures: "Corn syrup."*

1. Laws regulating the labeling and sale of food products within the state, so far as they affect interstate commerce, are within the field of concurrent jurisdiction of the state and federal governments, wherein the state may enact appropriate regulations if they do not conflict with federal laws.

2. After merchandise transported from one state to another has be-
come mingled with the general property of the latter state by
being treated as other property for sale to customers at retail,
it is no longer within the channel of interstate commerce, and
the fact that it is being sold in the original packages does not
prevent the state from subjecting it to appropriate police regu-
lations.

3. The act of Congress of June 30, 1906 (Food and Drugs Act),
regulates sales beyond the channels of interstate commerce in
the District of Columbia and the territories, but does not regu-
late such sales, *in the states*, of articles transported from one
state to another. It therefore does not preclude state legisla-
tion such as ch. 557, Laws of 1907, which does not prohibit the
sale of the articles specified but seeks to regulate the traffic
therein and prevent deception by prescribing how the packages
shall be labeled and branded to give information as to their
contents.

4. Such legislation to protect the public against imposition and de-
ception, even in the sale of articles of food which are wholesome,
may be enacted under the police power, and importers and ven-
dors of such articles are not thereby deprived of liberty or prop-
erty without due process of law in violation of secs. 1, 8, 9, 13,
art. I, Const. of Wisconsin, or Amendm. XIV, Const. of U. S.

5. The first clause in sec. 4601—1a, Stats. (Laws of 1907, ch. 557),
prohibiting the sale of unmixed syrups, molasses, or glucose
unless true to name as defined in the standards of purity "latest
promulgated by the United States secretary of agriculture," and
that part of said section which regulates the sale of syrups or
molasses mixed with glucose, are so distinct and independent of
one another that, even if the first clause is invalid because of
indefiniteness or because it attempts to delegate legislative
power to the secretary of agriculture (a point not determined),
such invalidity does not affect the other part of the section.

6. The term "syrup," as used in ch. 557, Laws of 1907, and kindred
statutes, designates articles of food which are in common use
as table syrups, the products of sugar-producing plants, possess-
ing natural characteristics of flavor, color, and viscidity which
make them acceptable as to quality and agreeable in taste, and
hence desirable as articles of table food. Glucose in its pure
and unmixed state is not such a syrup.

7. The terms "glucose" and "corn syrup" are not synonymous in
their trade meaning and use as applied to articles of table food;
and the use of the term "corn syrup" as designating glucose or
a mixture of glucose and syrup would naturally lead consumers
into the belief that they were obtaining syrup of the kind com-
monly known as syrup, the product of sugar-producing plants,
and hence such use of that term may be prohibited.

McDermott v. State, 143 Wis. 18.

TIMLIN and MARSHALL, JJ., *dissenting*, are of the opinion, among other things, that fraud or deceit upon the public which will uphold such a statute as ch. 557, Laws of 1907, and justify reasonable restriction of constitutional rights must be *actionable* fraud, resulting in damage as well as deception; that a statute which, like said ch. 557, authorizes, if it does not require, unmixed glucose to be called "corn syrup," but requires it to be called "glucose" when mixed with other designated substances, rather authorizes than prevents deception; that the term "corn syrup" is a lawful and also a popular, familiar, and correctly descriptive designation of the substance otherwise called glucose, and that the use of such designation would not deceive the public; that the purpose of ch. 557, as shown by its title, is "to protect the public health," not to protect against fraud or deception, and that it cannot be upheld on the latter ground; that, glucose being a wholesome substance, in no wise injurious to health, the statute requiring it to be labeled with that unpopular name tends to deprive the citizen of liberty and property in violation of constitutional rights, and also restricts interstate commerce by restraining the sale of an article of commerce after it has reached this state, without any valid reason for such restriction.

ERROR to review judgments of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

The defendants were, in separate actions, convicted in the municipal court of Dane county of violating ch. 557, Laws of 1907. Upon appeal to the circuit court for Dane county each of the defendants waived a jury and entered into a stipulation with the state whereby the two actions were to be tried together and the testimony taken was to be regarded as the testimony in each case. The actions are before this court on writs of error to the circuit court for a review of the proceedings wherein they were convicted and sentenced.

Ch. 557, Laws of 1907, so far as essential to the consideration of these actions, provides as follows:

"No person . . . shall sell, offer or expose for sale or have in his possession with intent to sell any syrup," etc., "unless the same be true to the name under which it is sold and as defined in the standards of purity for food products as latest promulgated by the United States secretary of agriculture;

. . . and no person . . . shall sell, offer or expose for sale or have in his possession with intent to sell any syrup," etc., . . . "or molasses, mixed with glucose, unless the barrel, cask, keg, can, pail or other original container, containing the same be distinctly branded or labeled so as to plainly show the true name of each and all of the ingredients composing such mixture, as follows:

"First. In case said mixture shall contain glucose in a proportion not to exceed 50 per cent. by weight, it shall be labeled and sold as 'Maple Syrup and Glucose,' " etc.

"Second. In case said mixture shall contain glucose in a proportion exceeding 50 per cent. and not more than 75 per cent. by weight, it shall be labeled and sold as 'Glucose and Maple Syrup,' " etc.

"Third. In case said mixture shall contain glucose in a proportion exceeding 75 per cent. by weight, it shall be labeled and sold as 'Glucose Flavored with Maple Syrup,' " etc.

The complaint in one case charges the defendant with having had for sale and selling a certain mixture composed of more than 75 per cent. glucose and less than 25 per cent. cane syrup, and that the can containing the mixture was labeled "Karo Corn Syrup;" "10 per cent. Cane Syrup, 90 per cent. Corn Syrup." In the case of the other defendant it is charged that the can was labeled "Karo Corn Syrup with Cane Flavor;" "Corn Syrup 85 per cent."

The defendants are retail merchants at Oregon, Dane county. The goods were bought by each of them from wholesalers in Chicago, a number of cans being packed together in a box. When received by the defendants the goods were removed from the boxes and placed upon the shelves in the stores for sale in their retail trade. The wooden boxes in which the goods were received have been destroyed. The sale of the articles is admitted.

Glucose is a viscid product made by treating starch with mineral acids. The acid is then neutralized, the product made colorless, and the water in it largely evaporated. Glucose is of a slightly sweet, insipid taste, and in order to make

it a palatable and salable article of food it is mixed with and flavored by cane, maple, refiners', or sorghum syrup. In Europe the starch used for producing glucose is almost exclusively obtained from potatoes; in the United States from corn. There was evidence that in the United States there exists a prejudice against glucose as an article of food and that dealers and manufacturers label and sell it as "Corn Syrup."

*H. O. Fairchild,* for the plaintiff in error, contended, *inter alia,* that ch. 557, Laws of 1907, is invalid, because in violation of the commerce clause of the federal constitution, being an attempted regulation of interstate commerce in an article of food after Congress had fully covered the same subject by specific regulations. The state statute forbids the sale of any article named in the statute unless the original container thereof be branded or labeled as specified in the statute, whether the article is or is not at the time a subject of interstate commerce, or the container is or is not the original package of such commerce. The act must be valid as to such articles of interstate or foreign commerce when held for sale or offered for sale or sold in unbroken original packages by the importer, or is altogether invalid. *U. S. v. Ju Toy,* 198 U. S. 253, 262, 263; *Employers' Liability Cases,* 207 U. S. 463, 497, 498, 509; *Ill. Cent. R. Co. v. McKendree,* 203 U. S. 514, 529, 530; *Trade-mark Cases,* 100 U. S. 82; *State v. Mo. Pac. R. Co.* 212 Mo. 658, 111 S. W. 500; *State v. C., M. & St. P. R. Co.* 136 Wis. 407, 417; *Gilbert-Arnold L. Co. v. Superior,* 91 Wis. 353, 357; *Huber v. Martin,* 127 Wis. 412, 445; *Connolly v. Union S. P. Co.* 184 U. S. 540. But the act is void as to interstate shipments held for sale by the importer in the original unbroken package. *Greek-Am. S. Co. v. Richardson D. Co.* 124 Wis. 469, 475; *Brown v. Maryland,* 12 Wheat. 419; *Schollenberger v. Pennsylvania,* 171 U. S. 1, 24. The federal food and drugs act is supreme and exclusive. *Morgan's S. Co. v. Louisiana Bd.*

*of Health,* 118 U. S. 455; *Covington & C. B. Co. v. Kentucky,* 154 U. S. 204, 212; *Gulf, C. & S. F. R. Co. v. Hefley,* 158 U. S. 98, 104, 105; *Interstate Comm. Comm. v. D., G. H. & M. R. Co.* 167 U. S. 633, 642; *State v. C., M. & St. P. R. Co.* 136 Wis. 407, 414. At the time ch. 557 was enacted Congress had already completely occupied the legislative field as to the branding and labeling of interstate shipments of food products, including those named in sec. 4601—1a, Stats., and the state could not lawfully cover any part of the same field so fully covered by the federal statute. Congress having assumed jurisdiction by its act over the entire subject, its regulations must be deemed to be full and complete and only such as it considers wise or proper to make. *Robbins v. Shelby Co. Tax. Dist.* 120 U. S. 489, 493; *Leisy v. Hardin,* 135 U. S. 100; *In re Rahrer,* 140 U. S. 545, 555, 556; *State v. C., M. & St. P. R. Co.* 136 Wis. 407, 414. But the provisions of the state statute are in direct conflict with the federal act and are therefore inoperative. There was therefore no law of the state violated by either of the defendants in making the sale of "Karo Corn Syrup with Cane Flavor," as charged in the complaints and warrants. In this view of the case it makes no difference whether, at the time of the sales by the defendants, the particular cans of syrup sold by them had or had not ceased to be articles of interstate commerce, because of the original package having been broken, if that be the case. Taking small packages from the large container does not withdraw them from the operation of the federal act. *U. S. v. Green,* 137 Fed. 179, 189; *State v. C., M. & St. P. R. Co.* 136 Wis. 407, 414. The state statute is invalid, also, because one of its chief provisions—without which the statute would not have been passed—is too uncertain and shifting to serve as a penal statute, and is also an attempted delegation of legislative power to the secretary of agriculture of the United States. No criminal statute can lawfully be thus changing according to

the whim or changing judgment of any individual. *Atkinson v. Goodrich T. Co.* 60 Wis. 141, 160; *Goodrich v. State,* 133 Wis. 242, 245; *Miller v. C. & N. W. R. Co.* 133 Wis. 183, 190, 191; *State v. Holland,* 37 Mont. 393, 96 Pac. 719, 722. The citizen cannot be driven to private sources to ascertain the laws under which he is living and must carry on his business, and the records of the Department of Agriculture at Washington are private sources. *State v. Holland,* 37 Mont. 393, 96 Pac. 719; *Brown v. State,* 137 Wis. 543, 548; *People v. Briggs,* 193 N. Y. 457; *Atkinson v. Goodrich T. Co.* 60 Wis. 141, 160. If the secretary of agriculture may change standards at will and the names therein defined, and the seller be required to comply with such changing and changed standards, then the lawmaking power is delegated to the secretary of agriculture. *Dowling v. Lancashire Ins. Co.* 92 Wis. 63; *In re North Milwaukee,* 93 Wis. 616; *State ex rel. Boycott v. La Crosse,* 107 Wis. 654, 659; *Anderson v. Manchester F. Assur. Co.* 59 Minn. 182; *State v. Holland,* 37 Mont. 393, 96 Pac. 719, 722; *O'Neill v. American F. Ins. Co.* 166 Pa. St. 72, 26 L. R. A. 715. Ch. 557 deprives the defendants of their liberty and property without due process of law, and is in violation of secs. 1, 8, 9, and 13 of art. I, Wisconsin constitution, and the XIVth amendment of the constitution of the United States. The defendants had the right to sell the articles in question, branded as they were branded—they being concededly wholesome,—unless the public safety would be injured or threatened thereby, and to deprive them of such right and to penalize them for exercising it was not only to deprive them of their property but of their liberty without due process of law. *People v. Hawkins,* 157 N. Y. 1, 8; *State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 530, 533, 534; *Allgeyer v. Louisiana,* 165 U. S. 578; *State v. Redmon,* 134 Wis. 89; *Bonnett v. Vallier,* 136 Wis. 193; *Dobbins v. Los Angeles,* 195 U. S. 223. Requiring the article to be sold as glucose is a fraud on the public as well as

the manufacturer and dealer. Prescribing such an obnoxious branding is unreasonable and therefore invalid. Freund, Police Power, §§ 50, 51; *People v. Hawkins,* 157 N. Y. 1, 8; *Collins v. New Hampshire,* 171 U. S. 30; *Crossman v. Lurman,* 171 N. Y. 329; *Crossman v. Lurman,* 192 U. S. 189, 195, 199, 200; *People v. Harris,* 135 Mich. 136.

For the defendant in error there were briefs signed by *Olin & Butler,* of counsel, and oral argument by *J. M. Olin.* They argued, among other things, that ch. 557, Laws of 1907, is not invalid because in violation of the commerce clause of the federal constitution or of the federal food and drugs act of 1906. All the authorities agree that (at least in the absence of Congressional action otherwise indicating) an article ceases to be the subject of interstate commerce and becomes subject to the police power of the state, when the original package in which it is usually and in good faith shipped has been received and broken by the importer, or when he has made the first sale thereof in the original package so received. *Cook v. Marshall Co.* 196 U. S. 261; *Austin v. Tennessee,* 179 U. S. 343; *May v. New Orleans,* 178 U. S. 496; *Greek-Am. S. Co. v. Richardson D. Co.* 124 Wis. 469. The mere fact that Congress, in the exercise of its power to regulate commerce, has legislated upon the general subject of the transportation and sale of an article of interstate commerce, does not, in itself, take away the right of the state, in the exercise of its police power, to make regulations concerning the same article as a subject of intrastate commerce, at least so long as such state regulations do not conflict with the federal regulation. *Reid v. Colorado,* 187 U. S. 137; *Asbell v. Kansas,* 209 U. S. 251; *Crossman v. Lurman,* 192 U. S. 189; *State v. C., M. & St. P. R. Co.* 136 Wis. 407, 416, 417; *Mo., K. & T. R. Co. v. Haber,* 169 U. S. 613, 624; *Gulf, C. & S. F. R. Co. v. Hefley,* 158 U. S. 98, 104; *W. U. Tel. Co. v. James,* 162 U. S. 650, 654; *Savage v. Scovell,* 171 Fed. 566. The federal act of 1906 does not

expressly or impliedly operate upon the original package of commerce after it has been broken, or after its first sale as such by the importer, but, on the contrary, the act clearly shows the Congressional intention to leave the article subject to state regulation after it has so ceased to be the subject of interstate commerce; and therefore there is no conflict between the federal act and the state law. A construction of the act of 1906 which would make it operate upon the contents of the original package of shipment, or upon such original package after its first sale by the importer, would render the act, thus far at least, invalid, as an unconstitutional invasion by Congress of the power reserved to the states to regulate their own internal affairs. The regulation of the internal affairs of a state by Congress is as unconstitutional as is the direct attempt by a state to regulate interstate commerce. *Ill. Cent. R. Co. v. McKendree,* 203 U. S. 514; *Geer v. Connecticut,* 161 U. S. 519, 531; *Covington & C. B. Co. v. Kentucky,* 154 U. S. 204, 210; *Sands v. Manistee R. I. Co.* 123 U. S. 288, 295; *U. S. v. Dewitt,* 9 Wall. 41; *Gibbons v. Ogden,* 9 Wheat. 1, 186; *License Cases,* 5 How. 504, 574. A statute whose terms are broad enough to include both intrastate and interstate commerce will be construed as applicable only to intrastate commerce when it would be unconstitutional if applied to interstate commerce. *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 650; *Church of the Holy Trinity v. U. S.* 143 U. S. 457, 459; *State ex rel. Gubbins v. Anson,* 132 Wis. 461, 473; 17 Am. & Eng. Ency. of Law (2d ed.) 75; *State v. Smiley,* 65 Kan. 240, 67 L. R. A. 903, 907; *Supervisors v. Stanley,* 105 U. S. 305; *Waters-Pierce O. Co. v. Texas,* 177 U. S. 28, 42; *Opinion of Justices,* 41 N. H. 553, and other cases. Whether the act in question applies to interstate commerce or not is not of much importance under the conceded facts of this case, since the defendants are in no position to raise that question, because the transactions involved were wholly of an intrastate char-

acter. It is only persons engaged in interstate commerce who can raise the constitutional question that a state statute violates the commerce clause of the United States constitution. *State v. Smiley,* 65 Kan. 240, 67 L. R. A. 903, 907; *State v. Sbragia,* 138 Wis. 579, 582; *State ex rel. Bergh v. Sparling,* 129 Wis. 164, 171; *Strange v. Oconto L. Co.* 136 Wis. 516, 524, 525; *Appleton W. W. Co. v. Appleton,* 116 Wis. 363, 373, and other cases. The provision of the statute that the article sold must be according to the standards as latest promulgated by the United States secretary of agriculture, and making it a misdemeanor to sell an article below such standard, is constitutional. The standards latest promulgated were in existence at the time ch. 557 of the Laws of 1907 was enacted. Hence, the application of the law in the present cases does not depend, as in many of the cases cited below, upon the determination by any board or officer of some fact or event in the future. The statute under consideration is not only complete in itself, but prior to its enactment the action of the outside board or officer designated had already taken place. Hence the law is to be construed the same as though the standards which had theretofore been determined by the committee on food standards and approved by the secretary of agriculture had been written out in the statute. Such a law is a valid enactment under all of the decisions. *Field v. Clark,* 143 U. S. 649; *In re Kollock,* 165 U. S. 526; *Caha v. U. S.* 152 U. S. 211; *Buttfield v. Stranahan,* 192 U. S. 470, 494; *Union B. Co. v. U. S.* 204 U. S. 364; *St. Louis, I. M. & S. R. Co. v. Taylor,* 210 U. S. 281, 286, 287; *Dastervignes v. U. S.* 122 Fed. 30; *Dent v. U. S.* 8 Ariz. 413, 76 Pac. 455; *Coopersville C. C. Co. v. Lemon,* 163 Fed. 145; *People v. Jennings,* 132 Mich. 662, 94 N. W. 216; *State v. Williams,* 93 Minn. 155, 100 N. W. 641; *State Board v. Gasau,* 107 N. Y. Supp. 409; *State Board v. Gasau,* 102 N. Y. Supp. 539; *State v. Emery,* 55 Ohio St. 364, 45 N. E. 319; *State v. Hutchinson,* 56

Ohio St. 82, 46 N. E. 71; *State ex rel. Port Royal M. Co. v. Hagood,* 30 S. C. 519, 9 S. E. 686; *Leeper v. State,* 103 Tenn. 500, 53 S. W. 962, 966; *Ex parte McManus,* 151 Cal. 331, 90 Pac. 702. It is immaterial that the standards in question were fixed by a body or authority outside the state of Wisconsin over which the legislature of the state has no authority. *U. S. v. Bailey,* 9 Pet. 238; *People v. Fire Asso.* 92 N. Y. 311; *Phœnix Ins. Co. v. Welch,* 29 Kan. 672; *State v. Williams,* 93 Minn. 155, 100 N. W. 641; *State Board v. Gasau,* 107 N. Y. Supp. 409; *State v. Emery,* 55 Ohio St. 364, 45 N. E. 319; *People v. Jennings,* 132 Mich. 662, 94 N. W. 216; *In re Griner,* 16 Wis. 423, 435; *In re Oliver,* 17 Wis. 681, 682, 686; *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 162; *State ex rel. Milwaukee Med. Coll. v. Chittenden,* 127 Wis. 468, 515.

SIEBECKER, J. The defendants in these two actions admit that in the conduct of their retail trade at their respective places of business they sold the article as a table syrup, as charged in the complaint. It is also admitted that the purchaser received from each defendant a can of goods of what is called "Karo," "Corn Syrup with (Cane) Flavor," which is a mixture of glucose and refiners' syrup.

Ch. 557, Laws of 1907, provides that no person shall sell, offer or expose for sale, or have in his possession with intent to sell, any of the syrups specified in the act or any molasses or glucose, unless the same be true to the name under which it is sold and as defined in the standards of purity for food products as latest promulgated by the United States secretary of agriculture, and unless the barrel, cask, keg, can, pail, or other original container containing the same be distinctly branded or labeled with the true name of its contents, as defined in the above-named standards; and no person shall sell, offer or expose for sale, or have in his possession with intent

McDermott v. State, 143 Wis. 18.

to sell, any syrup or molasses mixed with glucose, unless the barrel, cask, keg, can, pail, or other original container containing the same be distinctly branded or labeled so as to plainly show the true name of each and all of the ingredients composing such mixture. The law then prescribes how syrup and glucose mixtures shall be labeled and branded, and separates the same into three classes: First. If the proportion of glucose does not exceed 50 per cent. by weight, it shall be labeled and sold by prefixing the name of syrup used as "Maple Syrup and Glucose." Second. If such proportion of glucose exceeds 50 per cent. and not more than 75 per cent., it shall be labeled and sold by adding the name of syrup as "Glucose and Maple Syrup." Third. If the proportion of glucose exceeds 75 per cent., it shall be labeled and sold by adding the name of syrup used for flavoring as "Glucose Flavored with Maple Syrup." It also prescribes the type and color of the label and that the ingredients used must be free from substances injurious to health or prohibited for use as articles of food. Any person violating the provisions of the act is deemed guilty of a misdemeanor and subject to fine and imprisonment.

The defendants assail the validity of this legislation upon several grounds. It is asserted that the act is invalid because the provisions are violative of the commerce clause of the federal constitution, in that it attempts to regulate interstate commerce in an article of food, and that Congress has heretofore exercised its power by enacting specific regulations on the subject. The legislation, so far as it may be said to affect interstate commerce, falls within what has been termed the field of "concurrent jurisdiction" of the state and federal governments, and wherein the state may enact appropriate regulations provided they do not conflict with Congressional legislation on the subject. *Brown v. Houston,* 114 U. S. 622, 5 Sup. Ct. 1091; *State v. C., M. & St. P. R. Co.* 136 Wis. 407, 117 N. W. 686.

The contention, however, is earnestly pressed upon us that the provisions of this state statute which have been applied to these defendants are in conflict with the rights secured under the federal constitution granting the federal government authority to regulate interstate commerce. To support this claim it is asserted that defendants' sales of the article in the cans as imported by them were sales in unbroken original packages; that to make such sales is a right secured to them as importers; and that the state regulations impose restrictions on them as importers and thus violate their rights secured to them by the federal constitution. In *Greek-Am. S. Co. v. Richardson D. Co.* 124 Wis. 469, 102 N. W. 888, the right of an importer to sell the articles imported into a state was considered, and the original case of *Brown v. Maryland,* 12 Wheat. 419, was relied on to the proposition that "sale is the object of importation and is an essential ingredient of that intercourse of which importation constitutes a part." This right of sale is therefore under the federal authority assured to the importer because it is an act which, if inhibited, would in effect be a prohibition of the importation. In *Schollenberger v. Pennsylvania,* 171 U. S. 1, 13, 18 Sup. Ct. 762, the court, speaking on this subject, says:

"Reasonable and appropriate laws for the inspection of articles including food products were admitted to be valid, but absolute prohibition of an unadulterated, healthy, and pure article has never been permitted as a remedy against the importation of that which was adulterated and therefore unhealthy or impure."

The provisions of this statute in no way prohibit the sale of the articles embraced within the regulation. Its object is to so regulate the traffic therein as to protect the people against imposition and false pretenses. The context of the law evinces the purpose that the regulations should apply to the traffic in the designated articles of food from the time they become at rest and mingled with the property of the

state.   That goods and merchandise transported from one state to another may thus become commingled with property of the state upon arrival at its destination by treating it as other property for sale to customers in a retail business was recognized in *Brown v. Houston,* 114 U. S. 622, 5 Sup. Ct. 1091.   Under such circumstances, the fact that the articles are being sold in the original packages as transported cannot operate to prevent the state from subjecting them to proper police regulation for the protection of the people.   Under such conditions the articles are no longer in the channels of interstate commerce at the point of destination and before sale.   Their status at this point is like that of other property held by dealers for sale to consumers in the retail trade.   As was stated by Chief Justice MARSHALL in *Brown v. Maryland,* 12 Wheat. 419, the original case concerning sales by importers:

"It is sufficient for the present to say generally that when the importer has so acted upon the thing imported that it has become incorporated and mixed up with more of the property of the country, it has perhaps lost its distinctive character as an import. . . ."

Applying this principle for distinguishing between articles that are within and without the channel of interstate commerce to the facts of the instant case, it seems clear that, when the defendants received the articles at their places of business, removed the cans from the container in which they were shipped, and put the goods up for sale in the cans as they received them, they had so dealt with the articles as to mingle them with the general property of the state before they were sold by them in their retail trade.   *May v. New Orleans,* 178 U. S. 496, 20 Sup. Ct. 976; *Plumley v. Massachusetts,* 155 U. S. 461, 15 Sup. Ct. 154; *Austin v. Tennessee,* 179 U. S. 343, 21 Sup. Ct. 132.

It is, however, argued that these articles were in the channels of interstate commerce at the time of the sale because

Congress, under the food and drugs act of June 30, 1906 (ch. 3915, 34 U. S. Stats. at Large, 768, U. S. Comp. Stats. Supp. 1909, p. 1187), regulated the traffic therein, and that such regulation extends to and covers the regulation provided by the state law. The contention is that the federal act by specific regulation provides for the branding and labeling of articles of food, and that this regulation covers and embraces the acts of sale for which the defendants are being prosecuted and punished under this state law. The title of this federal act declares its purpose is to prevent "the manufacture, sale, or transportation of adulterated or misbranded or poisonous or deleterious foods," and for regulating traffic therein. By sec. 1 of the act it is made unlawful for any person to manufacture food in any territory and the District of Columbia which is adulterated or misbranded. Sec. 2 provides:

"That the introduction into any state or territory or the District of Columbia from any other state or territory or the District of Columbia, or from any foreign country, or shipment to any foreign country of any article of food or drugs which is adulterated or misbranded, within the meaning of this act, is hereby prohibited; and any person who shall ship or deliver for shipment from any state or territory or the District of Columbia to any other state or territory or the District of Columbia, or to a foreign country, or who shall receive in any state or territory or the District of Columbia from any other state or territory or the District of Columbia, or foreign country, and having so received, shall deliver, in original unbroken packages, for pay or otherwise, or offer to deliver to any other person, any such article so adulterated or misbranded within the meaning of this act, or any person who shall sell or offer for sale in the District of Columbia or the territories of the United States any such adulterated or misbranded foods or drugs, or export or offer to export the same to any foreign country, shall be guilty of a misdemeanor," etc.

In so far as this act regulates interstate commerce in articles of food it is a prohibition of the introduction of adul-

terated and misbranded articles of food from one state into another, and provides a punishment if any person shall ship or deliver for shipment such an article from one state to another, or who shall deliver it in the original unbroken packages for pay or otherwise, or offer to deliver it to any person, or any person selling it or offering it for sale in the District of Columbia or the territories of the United States. The first paragraph of this section forbids any person shipping and delivering for shipment the prohibited article from one state to another and receiving such an article into a state, and, after having so received it, delivering it in the original unbroken packages for pay or otherwise or offering to so deliver it. It will be observed that this part of the act does attempt to regulate the traffic in these articles in the course of their importation from one state into another without reference to a sale thereof after arrival at their destination. But in the next clause the sale thereof is also regulated in the District of Columbia and territories of the United States. The terms of the act plainly indicate that Congress extended its regulation expressly to the acts of sales in the District of Columbia and the territories, and the provisions of that regulation did not extend to the act of sale of an importation from one state to another. It is evident from these provisions of the act that Congress intended to extend its regulation of this traffic in the District of Columbia and the territories beyond the traffic within the channels of interstate commerce, obviously for the reason that the legislative function to prescribe all police regulations within these jurisdictions devolves on it, while in the several states of the Union this function devolves on the legislatures. *Sherlock v. Alling,* 93 U. S. 99; *Smith v. Alabama,* 124 U. S. 465, 8 Sup. Ct. 564; *Dent v. West Virginia,* 129 U. S. 114, 9 Sup. Ct. 231; *In re Rahrer,* 140 U. S. 545, 11 Sup. Ct. 865.

It will be observed that the statute of this state does not prohibit the sale or traffic in the article sold by the defend-

ants, but seeks to regulate the traffic therein to the extent of prescribing how the packages shall be labeled and branded to afford persons information as to the kinds and proportions of the ingredients composing the mixture. Its evident purpose is to prevent deception and to promote fair dealing in the sale of an article of food. If the regulation provided by the state tends to correct an actual evil in the traffic by which purchasers of an article of food are being deceived into buying something which it in fact is not, then the state acted within its appropriate field under the police power, and the law cannot be said to be invalid for want of power in the state to deal with the subject. The right of the state to legislate on this subject under such circumstances is well recognized and established.

The law is also assailed on the ground of indefiniteness in its provisions, and that it attempts to delegate legislative power to the secretary of agriculture of the United States. These alleged objectionable features are embodied in the first clause of sec. 4601—1a, Stats. (Laws of 1907, ch. 557), which prohibits selling, offering, or exposing for sale, or having possession with intent of selling, any unmixed syrup, molasses, or glucose "unless the same be true to the name under which it is sold and as defined in the standards of purity for food products latest promulgated by the United States secretary of agriculture," and requires the packages or containers to be branded or labeled accordingly. The section in a separate and independent clause next provides that no person shall sell any such syrup or molasses mixed with glucose, unless the original containers be branded or labeled as therein provided. The lower court held that the first part of the act relating to the mixtures of syrups, molasses, and glucose is a separate and independent clause, and wholly distinct from the clause preceding it, which deals with articles in their unmixed state as defined in the prescribed standard of purity. We are of the opinion that this ruling is correct. The pro-

vision pertaining to the mixed articles is as distinct from those in the preceding clause as if separated into independent sections; nor are the provisions of the former essential to give the latter meaning or completion.   The two parts deal with distinct topics in an independent manner.   Under these conditions we think that these two parts of the act were so treated by the legislature and that the one may be made operative and enforced without the other.   The legislature might well have considered that the simple unmixed articles for which standards were prescribed were much less liable to have been made the subject of imposition on the public than the mixed articles involved in the second clause, and thereby were induced to legislate as to the latter regardless of the considerations involved in prescribing regulations for the former. Under such conditions there is no apparent ground for holding that the adoption of the one part of the act was conditioned upon the adoption of the other.   This renders unnecessary consideration of the validity of the first part which is assailed by the defendants, and we do not pass on the question.   *Loeb v. Columbia Tp. Trustees,* 179 U. S. 472, 21 Sup. Ct. 174; *Quiggle v. Herman,* 131 Wis. 379, 111 N. W. 479; *State ex rel. Williams v. Sawyer Co.* 140 Wis. 634, 123 N. W. 248.

The defendants assert that they are deprived of their liberty and property under the provisions of this state statute without due process of law, in that the act violates secs. 1, 8, 9, and 13 of art. I of the state constitution and the XIVth amendment of the constitution of the United States.   The propositions involved in this claim of the defendants, as we · comprehend them, are that as a matter of fact the article sold is a wholesome article of food for table use; that it is in fact a syrup as this term is commonly used and understood; that the terms "glucose" and "corn syrup" are synonymous and are in commerce interchangeably applied to the product obtained from the starch-containing part of corn; that the article

sold is known to consumers as "corn syrup" and is by them understood to be a compound of the product obtained from the starch of corn, mixed and flavored with table syrup. The record sustains the contention that commercial glucose is extensively used as an ingredient in articles of food, and in its pure state is a nutritious and wholesome product. The claim that it is in fact a syrup, as this term is commonly used and understood, is not sustained. The term "syrup" has an accepted meaning as commonly and properly understood and applied to articles of food for table use. It is in this sense that the term must be applied in dealing with this subject, and in this sense the term "syrup" is employed in this and kindred legislation regulating traffic in foods. The term "syrup" thus employed designates articles of food which are in common use as table syrups, such as maple, sugar cane, and refiners' syrup. These articles in their pure and unmixed state are known by their inherent and peculiar colors, flavors, and viscidity which make them acceptable as to quality and impart to them an agreeable taste, and hence they are desirable as articles of table food. The evidence shows that such table syrups are the products of sugar-producing plants and possess these natural characteristics of flavors, colors, and consistency, and that they are commonly distinguished and known in the trade as syrups. It is not disputed but that glucose, whether made from corn or other starch-containing substance, is not such a syrup, and that it has none of the flavors or colors of these table syrups, though it has viscidity. The court was therefore fully justified in finding that glucose in the pure and unmixed state is not a syrup in the sense the term is commonly used and applied to these articles of table foods, and that the terms "glucose" and "corn syrup" are not synonymous in their trade meaning and use as applied to articles of table food. The fact that the term "corn syrup" may have been applied to glucose to some extent by manufacturers and dealers and was thus employed in legislation in

this state and in the decisions of courts does not show that glucose is commonly known by the designation of "corn syrup." The characteristics and qualities of glucose in its pure state are admittedly not those of the articles known in the trade as table syrups; nor is it used as a table syrup in its unmixed state. The term "corn syrup," as applied generally to an article for table use, conveys a meaning and designates an article wholly different in character and quality from that of glucose. It does not appear that "corn syrup" designates a mixture having a fixed proportion of glucose or syrup constituents. It seems that such constituents are of variant proportions in the article sold as "corn syrup." Nor can it be said that the great mass of persons understand that "corn syrup" is a mixture of glucose and syrup. The natural result of such use of the term "corn syrup" is to mislead the consumers into the belief that they are obtaining a table syrup of the variety and kind commonly known as syrup, the product of sugar-producing plants, and the consequences of such practice are that the consumers are misled and deceived in respect to the actual nature, the constituents, and the value of the article as a food product. Such a state and condition of affairs respecting the traffic in an article of food, though the article and its constituents are wholesome, is a well-recognized ground for the exercise of legislative authority under the police power to prescribe regulations to protect the people from imposition and deception in trafficking therein. *Gibbons v. Ogden,* 9 Wheat. 1; *Barbier v. Connolly,* 113 U. S. 27, 5 Sup. Ct. 357; *Powell v. Pennsylvania,* 127 U. S. 678, 8 Sup. Ct. 992, 1257; *Crossman v. Lurman,* 192 U. S. 189, 24 Sup. Ct. 234.

In reviewing the cases on this subject, the court in *Plumley v. Massachusetts,* 155 U. S. 461, 472, 15 Sup. Ct. 158, said:

"If there be any subject over which it would seem the state ought to have plenary control, and the power to legislate in respect to which it ought not to be supposed was intended to

be surrendered to the general government, it is the protection of the people against fraud and deception in the sale of food products. Such legislation may indeed indirectly or incidentally affect trade in such products transported from one state to another state, but the circumstance does not show that laws of the character alluded to are inconsistent with the power of Congress to regulate commerce among the states."

*Sherlock v. Alling,* 93 U. S. 99; *Austin v. Tennessee,* 179 U. S. 343, 21 Sup. Ct. 132; *Powell v. Pennsylvania,* 127 U. S. 678, 8 Sup. Ct. 992, 1257; *Meyer v. State,* 134 Wis. 156, 114 N. W. 501.

The provisions of ch. 557, Laws of 1907, under which these defendants were prosecuted and fined, clearly forbid sales without labeling or branding the articles as prescribed. That this legislation was a proper exercise of the legislative authority within the police power of the state we think is established by the authorities heretofore cited. Under these circumstances, the defendants' liberty and property rights secured to them by the state and federal constitutions have not been invaded, and their conviction of the charges preferred against them must be approved.

*By the Court.*—The judgment in each of the cases separately appealed from is affirmed.

TIMLIN, J. (*dissenting*). I cannot bring myself into agreement with the majority opinion. I suppose it is unquestioned law and will be generally conceded that where a regulatory statute restrains, diminishes, or denies a constitutional right, such as liberty or the use and enjoyment of property, it is the duty of and within the power of the court to inquire whether such statute really subserves any public purpose, giving the legislative predicate that it does so the utmost deference. *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273; *State v. Redmon,* 134 Wis. 89, 114 N. W. 137; *Schollenberger v. Pennsylvania,* 171 U. S. 1, 18 Sup. Ct. 757; *Dobbins v. Los Angeles,* 195 U. S. 223, 236, 25 Sup. Ct. 18;

*Allgeyer v. Louisiana,* 165 U. S. 578, 17 Sup. Ct. 427.
Hence, if a statute based solely upon the preservation of the
public health purported to restrain the sale or use of an ar-
ticle of food known by all possessing ordinary intelligence to
be wholesome and nutritious, although the article might be
caviare to the "unlearned increment," the statute would be de-
clared void because it would in that case be apparent to the
court that the law was based upon a clearly apparent error of
fact on the part of the legislature as regards the relation of
the law to the general public, and such law assuming to re-
strain liberty or interfere with the use and enjoyment of
property must fall because it lacked the support which the
statute must have before it can invade in any material degree
these constitutional rights.   It is conceded by the circuit
court and by the majority opinion, I think, that the substance
here in question is wholesome and in no wise injurious to
health.   In any view this is established.   When we come to
consider such a statute which has no support as preserving the
public health or the public peace, but must be upheld if at all
on the ground that it is intended to protect the public against
deception and fraud, many new considerations arise.   First,
what deceit or fraud will suffice to uphold such a statute?
Will anything in conflict with the most refined ethics suffice?
Will fraud upon the public be in such case defined from the
viewpoint of *caveat emptor* or *caveat venditor,* etc. ?   If any-
thing inethical will support such a statute, and we defer in
proper degree to the legislature and make the allowance for
difference of opinion which we accord to that branch of the
government, then there has been discovered a field in which
constitutional guaranties are vain and worthless, and in
which legislative activity may expend itself in fostering one
commercial interest or industry at the expense of another;
for trade is practically always inethical.   We would by sus-
taining such laws also invite into the legislative halls the
struggle for industrial and commercial gain or supremacy,

and in such case, if experience counts for anything, there is no doubt that the invitation would be eagerly accepted.

Without pursuing these reflections further, my opinion is that the fraud or deceit upon the public which will uphold such a statute and justify reasonable restriction of constitutional rights must be something which is recognized by law as actionable fraud.  In other words, there must be damage as well as deception.  To use a simple illustration: I do not think a statute imposing a penalty upon any one who sold salt not branded or designated as "chloride of sodium" or "sodium chloride" would be valid no matter what number of persons would refuse to use it under the latter name because they relished it as salt and despised it as sodium chloride.  In such case, in most cases which arise, and in the instant case (unless this ground of invalidity appears on the face of the statute), the court, because of the paramount rule of constitutional law involved, must hold the regulatory statute invalid when from judicial knowledge or notice the court can see that the statute can have no such relation to the public peace, health, morals, or welfare as is requisite to uphold the encroachment upon constitutional rights.  Great weight will, of course, be given to the assumed determination of this question by the legislature.  All this is now elementary law, but there remains its application.

Ch. 152, Laws of 1905, an act entitled as "relating to the sale of syrups, molasses and glucose mixtures," provided that no person should

"sell, offer or expose for sale or have in his possession with intent to sell any syrup, sugar-cane syrup, sorghum syrup, molasses or glucose, unless the same be true to the name under which it is sold, and as defined in the standards of purity for food products as *adopted by the United States Department* of Agriculture and unless the barrel, cask, keg, can, pail or *package* containing the same be distinctly branded or labeled with the true name of its contents as defined in the above-named standards; and no person shall sell, offer or expose for

sale or have in his possession with intent to sell any syrup, sugar-cane syrup, sorghum syrup, or molasses mixed with glucose unless *the mixture be sold as and for compound glucose mixture or corn syrup,* and unless the barrel, cask, keg, can, pail or *package* containing the same be distinctly branded or labeled *'Glucose Mixture' or 'Corn Syrup' in plain Gothic type,"* etc.

Ch. 557, Laws of 1907, under which the plaintiffs in error were convicted, is entitled "An act to amend secs. 1 and 2 of ch. 152, Laws of 1905, . . . relating to the sale of syrups, molasses, glucose mixtures and maple-syrup mixtures, and to protect the public health."   It amended the first-mentioned act to read:

*"No person, firm or corporation, by himself, officer, servant or agent, or as the officer, servant or agent of any other person, firm or corporation,* shall sell, offer or expose for sale or have in his possession with intent to sell any syrup, *maple syrup,* sugar-cane syrup, *sugar syrup, refiners' syrup,* sorghum syrup, molasses or glucose, unless the same be true to the name under which it is sold as defined in the standards of purity for food products as * * * *latest promulgated* by the United States * * * secretary of agriculture, and unless the barrel, cask, keg, can, pail or * * * *other original container* containing the same be distinctly branded or labeled with the true name of its contents as defined in the above-named standards; and no person, *firm or corporation, by himself, officer, servant or agent, or as the officer, servant or agent of any other person, firm or corporation,* shall sell, offer or expose for sale, or have in his possession with intent to sell any syrup, *maple syrup,* sugar-cane syrup, *sugar syrup, refiners' syrup,* sorghum syrup or molasses, mixed with glucose, unless the * * * barrel, cask, keg, can, pail or * * * *other original container,* containing the same be distinctly branded or labeled * * * *so as to plainly show the true name of each and all of the ingredients composing such mixture as follows:* * * * *Third. In case said mixture shall contain glucose in a proportion exceeding 75 per cent. by weight, it shall be labeled and sold as * * * 'Glucose Flavored with Refiners' Syrup,' "* etc.

The words italicised by me in the act of 1905 are omitted from the act of 1907, the italicised words in the act of 1907 are new in that act, and the asterisks in the latter act denote the places where the words omitted from the act of 1905 formerly appeared.

Prior to the commission of the acts for which plaintiffs in error are prosecuted, the United States secretary of agriculture, proceeding under the act of Congress of June 30, 1906, and acting with the secretary of the treasury and the secretary of commerce and labor, made a decision or regulation as follows:

"Washington, D. C., February 13, 1908.

"We have each given careful consideration to the labeling under the Pure Food Law of the thick viscous syrup obtained by the incomplete hydrolysis of the starch of corn and composed essentially of dextrose, maltose, and dextrin. In our opinion it is lawful to label this syrup as corn syrup. And if to the corn syrup there is added a small percentage of refiners' syrup, a product of cane, the mixture, in our judgment, is not misbranded if labeled 'Corn Syrup with Cane Flavor.'    [Signed.]"

The accused at the time they acted were then confronted with a Wisconsin statute which on its face authorized them to describe, brand, or label this substance by the same name by which it was lawfully known in interstate commerce and to sell and deal in it within the state under that name, viz., "Corn Syrup." Indeed, the statute went further, and required them to designate this substance as corn syrup, at least after the latest promulgation of the secretary of agriculture on February 13, 1908. But by that part of the statute of 1907 following the first semicolon, that substance which in its unmixed condition may or must be called "corn syrup" under the precedent portion of the same act, must when mixed with other designated substances be called "glucose." Would not such a statute rather authorize deception than prevent it? Does the statute not carry with it the inference that the leg-

islative object is to prevent or make difficult sales of the mixture by giving this substance in the mixture a different name from that given by the statute to it while it is in an unmixed condition? In the simple, says the statute, it shall be called and known as corn syrup; in the compound, the same substance shall be labeled glucose. The law either authorizes a false and misleading designation of the substance in the first place or it prohibits the use of a proper and lawfully authorized designation in the second place. It must be the latter because the term "corn syrup" is truly descriptive of the substance in question by reference to its origin and its appearance to the eye, and because by that portion of the statute in question preceding the first semicolon this substance may and perhaps must be so designated in interstate commerce as well as in intrastate commerce. The one name is composed of German and Latin derivatives and identifies the substance by two of its qualities, origin and appearance. The other name is Greek and identifies the substance by one of its qualities, sweetness. But the former term has been legalized as a name for the unmixed substance and remains so legalized. When the statute in question was enacted the legislature so framed the first part of the statute that the name by which this substance was known or should become known in interstate commerce under the rulings of the secretary of agriculture should also be the lawful name by which the substance should be known in the internal commerce of the state. This part of the statute, considered with the order of the United States secretary of agriculture of 1908, establishes, therefore, that designating the substance in question by the words "corn syrup" does not deceive. In the nature of things it could not deceive or defraud to describe one ingredient of a mixture by its proper, legal, and authorized name which it bore before being put into the mixture. The legislature did not determine that this was a false description, because it had before the amendatory act of 1907 and in and by the latter act au-

thorized the use of these words to designate the substance in question. That the legislature did not by this act of 1907 intend protection against fraud or deception is also apparent from the title thereof, wherein it is stated that the object of the act is "to protect the public health." The title of an act is not potent to limit or enlarge the words of the act, but for ascertaining the mischiefs which in the legislative mind the statute was aimed to prevent it has great force. Particularly is this true in a state like Wisconsin, where, before being put on their passage, acts are read merely by reading the title. *Eby's Appeal,* 70 Pa. St. 311, 314; *Conn. Mut. L. Ins. Co. v. Albert,* 39 Mo. 181; *U. S. v. Fisher,* 2 Cranch, 358, 383, and cases in Rose's Notes; *U. S. v. Palmer,* 3 Wheat. 610, 631; *Price v. Forrest,* 173 U. S. 410, 427, 19 Sup. Ct. 434; *Nazro v. Merchants' Mut. Ins. Co.* 14 Wis. 295. The legislature of Wisconsin enacted this law to preserve the public health, just as it declared in the title it did, but under the impression, now shown to be erroneous, that the prepared and partially hydrolized starch of corn was an unwholesome food, and the statute cannot and should not now be attempted to be upheld upon the different ground of prevention of fraud. It also appears, I think, as matter of fact, that there could be no deception of the public by the label in question. The article was sold as "Karo Corn Syrup with Cane Flavor." The word "Karo" I take to be a mere trade-name or trade-mark. The words "corn syrup" are not only a lawful but also a popular designation of the substance otherwise called "glucose," and there is no controversy but that the article sold was corn syrup or glucose flavored with refiners' syrup. Returning again to the order of the secretary of agriculture of date February 13, 1908, made pursuant to the act of Congress of June 30, 1906, we find this:

"In our opinion it is lawful to label this syrup as corn syrup. And if to the corn syrup there is added a small percentage of refiners' syrup, a product of cane, the mixture, in our judgment, is not misbranded if labeled 'Corn Syrup with Cane Flavor.'"

This is quoted again because it bears on the question of fact as well as on the question of law appearing on the face of the statute. It shows that the defendants were dealing in or selling the article under a name authorized and lawful in interstate commerce, and also under a name with which the public must have been familiar because of its extensive use in commerce. Add to this that the statute of Wisconsin for 1905 first quoted authorized this name, that books, newspapers, market reports, dictionaries, and encyclopedias speak of it as cereal syrup or as corn syrup, and that these words are in no respect false or misleading aside from the statute, but truly represent the origin and appearance of the substance, and it appears to me that there could have been no deception or fraud unless upon a class of people who by reason of ignorance have little or no knowledge of current speech, writings, statutes, trade, or commerce, and possess an unreasoning prejudice against anything named glucose, but find the substance, if labeled "corn syrup," palatable and cheap, and would purchase and use it if labeled "corn syrup," but would not if labeled "glucose." I do not think that, even conceding the existence of such a class, a police regulation based upon protecting the prejudice of the ignorant would be at all valid, but rather that this would be an additional ground of invalidity because of there being two permissible names, each of which truly described the substance, and the legislature compelled the selection of one which would limit the owner's sales and damage his trade. The oleomargarine cases are irrelevant. Those are cases of deceit by disguise and damage by sale of the cheap and inferior as and for the costly and superior article. This is a case of two names for the same substance. One describes it at least as well as the other. The defendants are compelled to use the first to identify the pure substance.

Without prolonging this dissent further, I think such legislation is unconstitutional both under the constitution of this state and under the XIVth amendment to the constitution of

the United States.    It tends to deprive the citizen of liberty and property contrary to law by requiring him to change the name and designation under which he purchased this property, and give it some name or designation instead offensive to some part of the trade without any legal foundation or reason for so doing.    I make no question but that if it had been shown that the article was injurious to health, or the sale of it constituted a legal fraud, the state in the exercise of its police power might restrict its sale by requiring it to be branded with some unpopular name, if that name alone truly designated the substance.    That would be a reasonable police regulation, interfering with interstate commerce to some extent, but not to an unlawful extent.    It would restrict and impede that commerce by forbidding the persons engaged therein from selling or further dealing in the articles of commerce after such articles had reached this state, but it would be justified by the necessities of the case.    I also think there the power of the state legislature ends, and, when the state regulation is shown to have no foundation in the police power of the state, such regulation becomes ineffective to restrain or interfere with the further traffic by the person engaged in interstate commerce in such article.    So that both on the ground that the statute restricts without warrant the constitutional rights of the accused and that it restricts interstate commerce by restraining the sale of such articles of commerce after they have reached this state without any valid reason for such restriction, I am convinced that the judgment of the court below should be reversed.    *Jewett Bros. v. Smail,* 20 S. Dak. 232, 105 N. W. 738; *Brown v. Maryland,* 12 Wheat. 419; *Schollenberger v. Pennsylvania,* 171 U. S. 1, 18 Sup. Ct. 757; Cooke, Commerce Clause, §§ 91, 99, and cases.

MARSHALL, J.    I concur in the dissenting opinion of Mr. Justice TIMLIN.